## JOHN HACKETT *v.* LUCIUS KENDALL.

*Statute of limitations. Absence. Domicil. Promissory note. Title of bearer.*

A debtor must be considered "to be absent from and reside out of the state," within the meaning of the exception in the statute of limitations, when his domicil within the state is so broken up, that it would not be competent to serve process upon him by leaving a copy there. And for that purpose there must be some place of abode, which his family or his effects exclusively maintain, in his absence, and to which he may be expected soon, or in some convenient time, to return, so that, a copy being left there and notice in fact proved, the plaintiff may take a valid judgment.

The defendant, in an action upon a promissory note, is not allowed to contest the plaintiff's title to sue, except for the purpose of protecting himself from a subsequent suit, in the name of some one having better title, and who has not acquiesced in the suit commenced.

But where it appeared, that the person, who was claimed by the defendant to be the real owner of the note, had full knowledge of all the proceedings in this suit, and had not in any manner asserted any right to interfere, it was held, that a payment of the judgment to the plaintiff, if permitted by the real owner of the note, would be a sufficient protection to the defendant.

Assumpsit upon a promissory note for $23,50, dated September 30, 1841, payable to Mehitable M. Booth, or bearer, in one year from date, with interest. Pleas, the general issue and the statute of limitations, and trial by jury, December Term, 1850,—Pierpoint, J., presiding.

On trial, the plaintiff, after giving in evidence the note declared upon, gave evidence tending to prove, that in the spring of 1844 the defendant, who had a family and kept house in Granville, Vermont, discontinued house keeping, and his wife went, with her child, to live with her father in Granville, and the defendant went to Massachusetts, for the purpose of finding temporary employment there, and not knowing how long he should be gone, or where he should stop, but not intending to change his residence, but to return to Granville again, and leaving his furniture and property there, with his family; that he remained at work in Massachusetts for more than a year, his family residing all the time in Granville, and at the expiration of that time he returned and resided in Granville, with his family, until April, or May, 1846, when he again went to Massachusetts, taking his wife and child with him, and leaving his furniture and effects at Granville, and intending to remain in Massachusetts and work during the season, and then to return to Granville, and not intending to change his residence from Granville to Massachusetts. The defendant's evidence tended to prove, that the intention of his wife, in accompanying him, was to visit some friends. It appeared, that the defendant, on this occasion, remained in Massachusetts, at work, until January, 1847, when he returned to Granville; and that he kept house in Massachusetts during the last three or four months of his being there; and that, about the time he commenced keeping house there, he made arrangements for returning to Granville, in

Hackett *v.* Kendall.

pursuance of his original intention at the time he left. There was no conflict in the testimony as to the time and manner of the defendant's residence in Massachusetts.

The defendant gave evidence tending to prove, that the payee of the note in suit was the wife of one Sidney Booth at the time the note was given, and that the note was given in payment for a carpet, which belonged to Booth previous to his marriage, and which he sold to the defendant;—and also gave in evidence copies of record from the United States' district court, showing the petition, proceedings thereon, decree and discharge in bankruptcy of Booth, after the execution of the note;—and also gave evidence tending to prove, that the note remained in the possession of Booth until a short time before the commencement of this suit, when he sold and transferred it to the plaintiff and soon after left the country;—and also proved by the assignee in bankruptcy of Booth, that he had no knowledge of the existence of this note, or of this suit, until the day of this trial, and that he never transferred the note to the plaintiff, or authorized any transfer of it or any suit to be commenced upon it. The defendant also offered to prove, that, at the time the note was executed, Booth requested to have it made payable to his wife, stating that he designed going into bankruptcy and wished that it should not pass to his assignee, and that the note was accordingly so executed. This evidence was objected to by the plaintiff and excluded by the court. There was no evidence, that the plaintiff had notice of the circumstances of the execution of the note, or of the proceedings in bankruptcy, before the purchase of the note. No evidence was introduced by the plaintiff in reference to the transfer of the note, or the facts connected with the consideration or possession of the note, or the proceedings in bankruptcy.

The court instructed the jury, that, if they believed the witnesses, the period of the defendant's absence to Massachusetts should be deducted from the period which elapsed between the time when the note became due and the commencement of this suit, for the purpose of determining the question, whether the note was barred by the statute of limitations ; and that the facts proved in regard to the bankruptcy of Booth and the transfer of the note did not constitute any defence to the note.

Verdict for plaintiff. Exceptions by defendant.

*E. J. Phelps* for defendant.

*Barber* and *Bushnell* for plaintiff.

The opinion of the court was delivered by

REDFIELD, J. The first question arising in the case is, whethér the defendant's absence from the state, as stated in the bill of exceptions, was of such a character, as properly to be deducted in computing the time of the statute of limitations. We understand from the argument, although the date of the writ is not copied into the case furnished to the court, that if either absence of the defendant be deducted, it will be sufficient to remove the bar. It will therefore only be necessary to examine the latter ; as, if this be not sufficient, the other must fail of course, and if this be allowed, it is sufficient.

It seems to us, that all, which it is important to determine, is, whether the defendant, at that time, left any domicil in this state. If not, he must be taken to " be absent from and reside out of the state," in the language of the statute. This question of domicil may possibly be viewed differently with reference to different subjects. But the consideration, which must have operated upon the legislature in so framing the statute in this case, seems to us to have been what is suggested by counsel,—whether the defendant's domicil in this state was so broken up, that it would not have been competent to serve process upon him, by leaving a copy there. And for that purpose, it seems to us, there must be some place of abode, which his family or his effects exclusively maintain in his absence, and to which he may be expected soon, or in some convenient time, to return, so that, a copy being left there and notice in fact proved, the plaintiff may take a valid judgment. The merely scattering the remnants of his effects among his friends seems more like breaking up than keeping a domicil.

It is useless to speculate upon possible cases. It is obvious the latter absence of the defendant left no such domicil in this state. A somewhat similar rule has been adopted in regard to a residence to confer a settlement in this state during the actual absence of the person concerned, for all or a portion of the time. In *Middletown* v. *Poultney*, 2 Vt. 437, it is said, that one's family, to continue his residence in his absence, for such purpose, " must continue together, keeping house as a family."

In regard to the plaintiff's title to the note in this case, that is a question, which the defendant is only allowed to raise for the purpose of protecting himself from a subsequent suit in the name of some one having better title, and who has not acquiesced in the present suit. Beyond that the defendant is not allowed to contest the plaintiff's title to sue.

In the present case nothing appears to make it at all probable, that the assignee will ever assert any control over this note. The settlement of Booth's estate is no doubt closed in the district court, the bankrupt law is repealed, this note is of insignificant amount, and even if the saving in the repeal of the law would justify the assignee in instituting a new proceeding in that case, it is absurd, almost, to suppose it will be done.

But it may be said, the principle is as important, as if the debt were larger. It is more so, perhaps; for there is little else, which is important here. And it appearing, that the assignee had notice of this suit, before the judgment in the court below, he must now be esteemed as acquiescing in the farther progress of the suit, which he might at any time arrest, if not at law, certainly in equity, if the amount were sufficient. And even after this judgment is entered up, the assignee, if his title is good,—which I should not much doubt,—and he courts such an office, may now, as we think, control the collection of the execution; and if he do not interfere, until the money is paid over, he must " forever hold his peace," and the payment will protect the defendant. Judgment affirmed.