BENJAMIN P. WARE & another, executors, *vs.* JOHN E. GOWEN
& another.

In an action commenced in 1870 on a promissory note given in 1856 by a citizen of this
Commonwealth then resident near Boston, the defendant testified that soon after making
the note he went to Russia under a contract to raise sunken ships, and was absent until
1865, (with the exception of one return,) when he came back to this Commonwealth;
that he completed his contract for raising the ships in 1862, and after that laid out rail-
roads in Russia while waiting for the settlement of his accounts; that during his absence
he always meant to return; that he took his wife and one child with him; that his other
children remained here; and that his furniture was stored here. There was also evidence
that the defendant, while in Russia, spoke of Boston as his home; and that he had said
that he built 4000 miles of railroad in Russia. *Held,* that this was evidence upon which
a jury might find that the defendant had resided out of the Commonwealth within the
Gen. Sts. c. 155, § 9.

CONTRACT by Benjamin P. Ware and John Q. A. Clifton,
executors of the will of John Clifton, against John E. Gowen
and Franklin Copeland, on a promissory note dated April 22,
1856, signed by the defendants, payable to Charles F. Lougee or
order, and by him indorsed to the plaintiffs' testator. Writ dated
July 29, 1870.

At the trial in the Superior Court, before *Putnam,* J., the
making of the note was admitted, and the plaintiffs conceded that
the statute of limitations was a bar as against Copeland.

Gowen was called as a witness by the plaintiffs, and testified
" that at the date of the notes he resided with his family in Rox-
bury, near Boston; that soon afterwards he made a contract with
the Russian government for the raising of the sunken vessels at
Sebastopol; that he left this country in August 1856, returned in
December 1856, left again in 1857, and was absent for eight years,
(with the exception of one return in 1862,) when he came home,
and has remained here since that time, residing with his family
the last two and a half years in the same place in which he lived
before he left in 1857; that from 1865 to 1869, he remained about
one half of the time in Boston, and the rest of the time was trav-
elling about this country and visiting in various cities from Maine
to Texas; that he finished his contract with the Russian govern-
ment in 1862 for raising the vessels, and then had some connec-

tion with laying out railroads in Russia, while waiting there to settle his accounts with the Russian government; that his wife then returned to Massachusetts, but returned again to Europe, and was back and forth once or twice; that in 1869, he went to Europe with an invalid daughter and left her with his wife in Paris and returned immediately to this country; that he was travelling all over the continent after he finished his contract for raising the vessels, not remaining over three weeks at a time in any one place; that when he left he never had any intention of giving up his residence here, but always intended to return, always described himself as a resident of Boston, and described himself in a patent which he took out in England as a citizen of Massachusetts; that at all times his intention was to return; that his wife continued at all times to own real estate in Massachusetts; that some of his children remained here, and one or more of them attended school in Boston; that he took with him his wife and one child; that his wife went back and forth between Europe and, this country while he was in Russia; that he went for no other purpose but to fulfil said contract; that his furniture was stored in Boston, with a relative, with whom his children who remained here boarded; that he always had an American passport, which he renewed each year; that he never claimed citizenship in Russia; and that they always spoke of him in Russia as an American citizen."

Upon being asked where he obtained his title as colonel, he said from the Russian government; that it was given to him to give him a *status* in Russia, and control over the large body of men who worked under him; and that he did not receive a written commission; but that it was an appointment from the Grand Duke Constantine. Some dispute arising as to what he said on this point, he was recalled, and said "that he did not mean to say he had the appointment from the Grand Duke; that he had a commission from the State of Pennsylvania, just before he left the country, as colonel; that when he reached Russia he asked the Grand Duke if he might exercise that title there and be called by that name, as it would give him more authority over the men under his employ at Sebastopol; and that the Grand Duke gave his assent."

Copeland was also called as a witness by the plaintiffs, and testified that he went out with Gowen when he first went out; that Gowen took with him his wife and daughter; that he remained with him one year, and during that time they all boarded at a hotel in Russia; and that Gowen claimed all the time he was there to be a citizen of Massachusetts, and always spoke of Boston and Roxbury as his home.

One of the plaintiffs testified "that Gowen once spoke to him about this claim, but never said it was outlawed; and that Gowen told him he built in Russia 4000 miles of railroad."

Upon this evidence the judge ruled that there was no evidence upon which the jury could find that Gowen had resided out of the State within the meaning of the statute of limitations; and therefore that the statute was a bar; and he directed a verdict for the defendants, which was returned, and the plaintiffs alleged exceptions.

*D. E. Ware*, for the plaintiffs.

*C. Robinson, Jr.*, for the defendants.

BY THE COURT. There was evidence to go to the jury that Gowen was absent from and resided out of the State within the meaning of the statute. Gen. Sts. *c.* 155, § 9.*

*Exceptions sustained.*

---

* "If, at the time when any cause of action mentioned in this chapter accrues against a person, he is out of the State, the action may be commenced, within the time herein limited therefor, after he comes into the State; and if, after a cause of action has accrued, the person against whom it has accrued is absent from and resides out of the State, the time of his absence shall not be taken as part of the time limited for the commencement of the action."