# RICHARD N. VENABLE

## *vs.*

## EDMUND E. PAULDING.

The departure from and residence out of the state to which *Gen. Stat.*, *ch.* 66, *s.* 15 refers, must be not merely temporary and occasional, but of such character and with such intent as to constitute a change of domicil, meaning by domicil, in this connection, the debtor's home or place of abode.

The cause of action in this case accrued July 8, 1857. Defendant from

Venable v. Paulding.

that time and till April, 1861, was a citizen of Minnesota, residing and practicing law in St. Peter, and sleeping in the back room of a rented law office. He had no establishment there, and no real property in the state. He left for Washington in April, 1861, with the intention of obtaining an appointment under government, and never returned to Minnesota till August, 1870. Shortly after he reached Washington, he was appointed a paymaster in the army, and so continued till after the close of the war, and was afterwards, till 1870, clerk of a congressional committee. He married in 1861, and from April, or May, of that year made Washington his place of residence, leaving it for the places to which from time to time he might be sent, but always returning there as to a place of present abode. He gave in his vote in 1863, and 1864, to the commissioner appointed to receive the votes of Minnesota soldiers. He testified that he never intended to change his residence. Since Aug, 1870, he had resided in Minnesota. The summons in this action was served July 27, 1872. *Held*, that the judge before whom the case was tried erred in directing the jury to return a verdict for plaintiff, instead of leaving to them, under proper instructions, the question of defendant's domicil during his absence.

Evidence that defendant was officially registered as appointed from Minnesota, and so borne on the rolls, and designated in the Army Register, was properly excluded as irrelevant.

So also, that his former law partner took and kept possession of his furniture, library and personal effects in Minnesota, and had rendered no account thereof.

This action was brought in the district court for Ramsey county, upon a promissory note made by defendant, dated July 8, 1857, payable on demand. The action was commenced in July, 1872. The complaint alleges the amount due on the note, and states: " That in the month of May, 1861, said defendant departed from and thereafter resided without said state, until the month of August, 1870," &c. The answer denies the allegation of the complaint above quoted, and states that defendant "has resided and had his home and place of residence and domicil in, and been a citizen and resident of the state of Minnesota ever since November, 1856, all the time, and has not been absent from said state, except temporarily,

and in the service of the United States, since November, 1856," &c. For a further defense defendant pleads the statute of limitations.

The principal issue upon the trial, was as to *domicil* and *residence* of the defendant during the time stated in the complaint, as above specified, the defense of the statute of limitations depending upon this issue.

The testimony of two witnesses only was introduced on the part of the plaintiff, the defendant being one of them, and his testimony was in a deposition taken pursuant to stipulation. No witness was called by the defendant. The facts established by the evidence are stated, substantially, in the syllabus, and it is unnecessary to repeat them here, or to give the evidence supporting them.

In the deposition of the defendant, upon his cross-examination, there appears the following testimony, which is referred to in the opinion as being " at folio 34 of the paper book :" " My residence was in the Army Register as of Minnesota, and the appointment was charged to Minnesota. The state records on file in the adjutant general's office will show that I was appointed paymaster from Minnesota in the United States army. I was appointed secretary of the committee of the senate, of which Alexander Ramsey was chairman. on account of being a resident of Minnesota, by Alexander Ramsey," which was objected to by plaintiff, " because not cross-examination and immaterial," and the objections sustained by the court, to which defendant excepted.

The testimony of defendant, which was excluded upon the objection of the plaintiff, to which exception was taken by defendant, referred to in the opinion as " in folio 47," was in respect to certain personal property owned jointly by the defendant and Gov. Austin, and has no relevancy to the ques- of residence and domicil.

The court instructed the jury that upon the pleadings and the evidence the plaintiff was entitled to a verdict, to which instruction defendant duly excepted. The jury rendered a verdict in accordance with such instruction.

Defendant moved for a new trial, which was denied *pro forma*, and the defendant appeals to this court.

M. LAMPREY, for Appellant.

SUMNER LADD and W. P. WARNER, for Respondent.

*By the Court.*—RIPLEY, CH. J.—*Gen. Stat. ch.* 66, *s.* 15, provides, that if, after the cause of action accrues, the defendant departs from and resides out of the state, the time of his absence is not part of the time limited for the commencement of the action.

The plaintiff contends that this is to be construed as if it had, in terms, provided that the statute should be suspended, whenever and so long as defendant is physically without the state, and has no house of his usual abode within it. In such a case, in his view, the defendant cannot properly be said to reside in the state.

To depart from and reside out of the state, and to be absent from and reside out of the state, are expressions, in this connection, so similar in meaning as to render decisions upon statutes using the latter phraseology applicable here.

The rule is established in New Hampshire, that every absence from the state, temporary or otherwise, if it be such that the creditor cannot, during its continuance, make a legal service upon the debtor, must be excluded ( *Gilman vs. Cutts,* 3 *Foster,* 376 ; *Ward vs. Cole,* 32 *N. H.* 452 ; *Ward vs. Herd,* 38 *N. H.* 35) ; and the plaintiff seems to consider his position above stated to be identical therewith.

This, however, is scarcely so, for unless there be a person of

suitable age and discretion in such house, with whom a copy of the summons may be left, service cannot be got upon the debtor in this state. *Gen. Stat., ch.* 66, *s.* 48, *sub.* 4.

But if the propositions were identical, the weight of authority is, we think, decidedly against the rule of the New Hampshire court. *Burroughs vs. Bloomer,* 5 *Denio,* 532 ; *Wheeler vs. Webster,* 1 *E. D. Smith,* 1 ; *Hickock vs. Bliss,* 34 *Barb.* 321 ; *Hackett vs. Kendall,* 23 *Vt.* 275 ; *Hall vs. Nesmith,* 28 *Id.* 791 ; *Drew vs. Drew.* 37 *Me.* 389 ; *Buckman vs. Thompson,* 38 *Me.* 171 ; *Collister vs. Healey,* 6 *Gray,* 517 ; *Sleeper vs. Page,* 15 *Gray,* 349 ; *Langdon vs. Drew,* 6 *Allen,* 423 ; *Hallett vs. Bassett,* 100 *Mass.* 169 ; *Johnson vs. Smith,* 43 *Missouri,* 499.

" Resides out of the state," and " the time of his absence," have the same meaning ; they are correlative expressions. So that while the debtor resided out of, he was absent from the state. *Burroughs vs. Bloomer, supra.*

One cannot reside in the state, and at the same time reside out of it. To depart from and reside out of the state, means a change of residence from this state to some other state, not a temporary or occasional absence. *Hickok vs. Bliss, supra.*

There is, as it seems to us, no tenable middle ground between the position taken in New Hampshire, and the doctrine established in Massachusetts, viz. : that such residence out of the state, must be not merely temporary and occasional, but of such character, and with such intent, as to constitute a change of domicil, (*Hallett vs. Bassett,*) understanding "domicil" as the Massachusetts court understands it to mean in this connection, the debtor's home or place of abode. *Langdon vs. Drew, supra.*

No one word is more nearly synonymous with the word domicil, than our word " home." *White vs. Brown,* 1 *Wallace, Jr.,* 262.

In the present case, the question for the jury would have

been as to the legal domicil, the home or place of abode of the defendant during the time which has elapsed since the cause of action accrued.

The cause of action accrued July 8, 1857. The summons was served July 27, 1872.

•A verdict for plaintiff must have been on the ground that defendant's domicil had been elsewhere than in Minnesota for something over nine years of this period of time. *Hallett v. Bassett, supra.*

If there was no evidence which tended to prove the contrary, or, which comes to the same thing, if a verdict for defendant could not be allowed to stand because not justified by the evidence, a new trial is not to be granted.

The departure from the state is not necessarily to be understood of a departure with intent to permanently change the residence. *Johnson vs. Smith, supra.*

The defendant in this case left Minnesota for Washington in April, 1861, with the intention of obtaining an appointment under government, and never returned till August, 1870. Though he might have gone with the original intention of returning to St. Peter, yet in that length of time his general residence, his home, might have become fixed at Washington. *Amer. Lea. Cas.* 697, *note to Guier vs. O'Daniel, citing The Harmony,* 2 *Rob. Adm'x Rep.* ; *Bruce vs. Bruce,* 2 *Bos. & Pull.* 229, *n.*; *Butler vs. Hopper,* 1 *Washington C. C. Rep.* 500.

Whether it had become so or not after he left the U. S. service and became the clerk of a congressional committee, we need not enquire. An answer to the question as to where, in law, this defendant's home was during a part of his absence from the state, for enough thereof, at least, as would suffice to bar this demand, certainly depends upon a comparison of circumstances, a weighing of the evidence.

If when he left Minnesota he had a special purpose of ob-

taining employment under government, this, of course, would not necessarily involve the idea or intention of a change of residence. He might obtain employment which would require him to live here. That which he did obtain was not, in its nature, such as to attach him to any particular place other than Minnesota. St. Peter was his home, his usual place of abode in April, 1861. It remained so till he acquired another; and if it remained his home for a few months only after he left the state, that would bar this action. He says he never intended to change his residence. He gave in his vote in 1862, and 1864, to the army commissioner.

The laws of Minnesota (*Laws of* 1860, *ch.* 18, *sec.* 49, *et seq.*) passed while defendant was a member of the legislature declared him to have lost his residence for the purpose of voting, unless his departure from the state had been for temporary purposes only, with the intention of returning, and if he had removed to another state with the intention of remaining for an indefinite time, and as a place of present residence, notwithstanding he entertained an intention of returning at some future period, and forbade him in that event to vote, making it a public offense to do so. And before giving in his vote he was obliged to swear that he had been an inhabitant of the state of Minnesota for four months immediately preceding the election in question, and an actual resident of the election district (in which he offered to vote) for the ten days immediately preceding the election in question. *Laws of* 1861, *ch.* 15, *sec.* 74.

The act of voting, under these circumstances, tends to show that his departure and absence from the state was at that time for temporary purposes only, and with the intention of returning, while it would tend to negative any theory that he had removed to Washington with the intention of remaining for an indefinite time, and as a place of present residence, notwith-

standing he entertained an intention of returning at some future period.  *Offering* to vote by a sailor, was considered to be a striking fact to show that he considered himself in the light of a citizen.  " The evidence resulting from the offer of intention to settle and reside, is the same as if it had been actually received."  *Guier vs. O'Daniel*, 1 *Amer. Lea. Ca.* 733.

What the election law considered to negative residence in the state, would also, it is to be noticed, on general principles negative domicil, or home there ; for where a person lives is taken *prima facie* to be his domicil, unless other facts establish the contrary, (*Ennis vs. Smith*, 14 *How.* 400,) and if he was living in Washington as a place of present residence, though he had an intention of retaining his domicil in and returning to Minnesota at some future indefinite period, he could not be said to retain a dwelling place in Minnesota, and his domicil would not be there.  (*Holmes vs. Greene*, 7 *Gray*, 299.)  Evidence tending to negative such a state of facts would therefore be material for the defendant in the present case, and voting as above would have such a tendency.

On the other hand domicil never depends on a bald intent. *Holmes vs. Greene*, *supra*.  The character of the defendant's residence in Washington is to be considered.  His testimony will bear the construction that he made it from the time of his appointment in April, or May, 1861, his place of residence, leaving it for the places to which he might from time to time be sent, but always returning there as to a place of present residence.  As a paymaster in the army he might have continued to live at St. Peter.  He might have brought his wife there and returned there after each absence on duty.  His not doing so is a fact to be considered.

Then, Minnesota was not his domicil of origin.  It would therefore be more easily changed.  The defendant had no establishment there, appears to have owned no real estate there,

and though we see no reason to question the correctness of his position that he had acquired a domicil in Minnesota, it was not one which would cling very strongly. It seems to be considered in *Langdon vs. Drew, supra,* that while one continues to be domiciled in a state, he must have a "last usual place of abode," where a summons could be served, which under Massachusetts laws could be perfected into a valid judgment. The question suggests itself, whether defendant, married, and living with his wife in Washington, had not abandoned as a home, as a last usual place of abode, the back room of the rented office in St. Peter, in which he states he was living in the spring of 1861. If he had, and was residing in Washington with the purpose of remaining there an indefinite time, and without keeping up any *animus revertendi,* or intention to return to such abandoned home, his domicil was in Washington. *Willraham vs. Ludlow,* 99 *Mass.* 587; *Sleeper vs. Paige,* 15 *Gray,* 349; *Whitney v. Sherborn,* 12 *Allen,* 111.

All these matters, and others not alluded to, but appearing in evidence, and bearing respectively *pro* and *con* on the question of defendant's domicil, were for a jury to weigh. We do not undertake to do so. We do not see, however, upon what ground the district court, if the jury upon such weighing of the evidence under proper instructions had returned a verdict for defendant, could have felt itself constrained to set it aside as against the weight of the evidence. It follows that the order denying a new trial should be reversed.

There was no error in excluding the testimony of defendant at folio 34 of the paper book. It at the most only tended to show the belief of those who appointed him to office or made up the records to which he refers.

As to the testimony excluded on fol. 42 as plaintiff says, it might be evidence to show a conversion by Gov. Austin of defendant's effects, but it has no bearing on the question

whether defendant's home, after April, 1861, was in Minnesota or Washington.

Verdict set aside and new trial ordered.