IRENE L. PLATT, Appellant, v. CHARLES L. CARTER, Appellee.

**LIMITATION OF ACTIONS:** Temporary Absence as Tolling Statute. The time during which a resident of this state and his entire family are absent from the state for a purely temporary purpose, and with no intent to abandon domicile in this state, does not, for two reasons, toll the statute of limitation:

1. Such absence does not constitute the debtor a "nonresident of the state," within Sec. 3451, Code, 1897, and

2. The creditor might, at any time during such absence, toll the statute, by delivering the notice of suit to the sheriff for immediate service. (Sec. 3450, Code, 1897.)

*Appeal from Webster District Court.*—E. M. McCALL, Judge.

NOVEMBER 11, 1919.

WHAT we have to decide is how the words "nonresident of the state," found in Section 3451 of the Code of 1897, which tolls the statute of limitations during the time in which a defendant is a nonresident of the state, should be interpreted. The trial court held that, as matter of law, there was no time in which the defendant was a nonresident, within the meaning of said statutory provision, and the plaintiff appeals.—*Affirmed.*

*Robert Healy,* for appellant.

*Burnquist & Joyce,* for appellee.

SALINGER, J.—I. Did the absence of the appellee toll the statute? Appellant states that appellee "removed" to

California, and qualifies this with the further statement that perhaps it is more accurate to say that he "went" to California. In our opinion, it is better that, at this point, we state the facts as to what was done, rather than give a name to it.

Plaintiff suffered an injury in some way, due to something done in a three-story brick building, erected by defendant in Fort Dodge. She suffered this injury in September, 1914. About December, 1914, the defendant completed in Fort Dodge a new dwelling house, constructed of hollow brick and concrete. He was a manufacturer of iron and metal products, and has been in that business at Fort Dodge for a number of years. The company of which he was president and principal owner is located at Fort Dodge. Practically all of plaintiff's business interests have been and are there. A year passed, after the erection of the dwelling house in 1914. In December, 1915, defendant arranged to go, and did go, to California. Of this the plaintiff was advised; for she herself prepared the farewell dinner, the night before defendant and his family left for California. During the absence in California, the Fort Dodge home was closed. No one was left in charge of it, and no one remained upon whom service by substitution might be made. The trip was a 90-day trip. It was taken in part on account of the health of defendant's wife, in part to look after a mortgage he had on some property in California, and in part for pleasure. Defendant had no intention of giving up his residence in Fort Dodge, or acquiring one in California. He purchased three round-trip, 90-day tickets. The only baggage taken was two trunks and two suit cases. All the furniture and effects of the family were left in the home at Fort Dodge, and the keys thereof with a neighbor. Said residence was offered neither for sale nor rent. There was no intention to change residence, or to do anything except spend the months of December, January,

and February in California. The family corresponded with plaintiff, while absent. All returned upon these round; trip tickets. Before leaving, appellee bought an automobile in Fort Dodge, to be shipped to California for his and his family's use while in California. While in California, they made Los Angeles their headquarters, and rented one room, with a kitchenette, and furnished, and part of the time, they had two rooms and a kitchenette. They drove out on trips of from 2 to 5 days. Defendant entered into no business in California. He continued to keep in touch with his office at Fort Dodge.

The ultimate contention of the appellant is that the time during which defendant and his family were out of the state on this California trip should be deducted; because, during that time, whether technically the residence and domicile were changed or not changed, there was no one remaining in the state upon whom or through whom notice might be served. The ultimate argument is that Section 3447 of the Code is tolled during any period during which no service can be made within the state. If we shall find ourselves constrained to hold against this position, the action of the trial court must be sustained.

II. The argument of many cases relied on by appellant would demand most serious consideration, had they been decided under statute law similar to that of Iowa. That argument is that, even though the absence be temporary, and though there be an intent to return, and a return, the fact remains that, during the absence, service of process may not be made, and that sufficiently multiplying such absences might easily be resorted to, to bar a just claim. *Ward v. Cole,* 32 N. H. 452; *Gilman v. Cutts,* 23 N. H. 376; *Hackett v. Kendall,* 23 Vt. 275; *Vanlandingham v. Huston,* 4 Gilm. (Ill.) 125. But even if statute law had no influence on these cases, an equally persuasive counter argument is possible. It is manifest that considerable hard-

ship might result, if stale claims could be pressed because of the aggregate of purely temporary absences. Defendants might be compelled to litigate such claims merely because they had not maintained a bookkeeping system enabling them to say at any time on just what days they had been in the state, say during ten years past. If going to California 'for three months for a purely temporary purpose, and with intent to return, effected by returning, tolls the statute, so would a trip from a point in Iowa to Chicago, to hear grand opera during a day or two, if no one was left at home upon whom or through whom service could be made. Recognizing the force of this argument, even as the cases referred to recognize the opposing argument, many well-considered cases hold that temporary absence will not toll the statute. In *Carden v. Carden,* 107 N. C. 214 (12 S. E. 197), it is held that nonresidence, as used in limitation statutes, means actual cessation to dwell within the state for an uncertain period, without definite intention as to a time for returning. In *Barney v. Oelrichs,* 138 U. S. 529 (11 Sup. Ct. Rep. 414), it is ruled that the words "to reside out of the state" mean the taking up of an actual abode or dwelling place elsewhere, and not a mere temporary sojourn for transient purposes; that the residence out of the state which operates to suspend the statute is a fixed abode, entered upon with the intention to remain permanently, at least for a time, for business or other purposes. The court holds that this conclusion has been reached, in effect, by many of the state courts. It names Massachusetts, Maine, Vermont, and New Hampshire, and what it styles 'the well-considered opinion of the Supreme Court of Illinois, in *Pells v. Snell,* 130 Ill. 379 (23 N. E. 117). That case rules that, under a statute suspending the time during which the debtor "departs from and resides out of the state," an instruction which charges that, to suspend the statute, the periods of absence must extend so long as

to justify the belief that the debtor was not on mere temporary business or social visit is erroneous, because the test is whether a fixed abode is established outside of the state, and not the mere length of the absence. Appellee contends we held to like effect in *Farrow v. Farrow,* 162 Iowa 87. It is therein declared that the only change of residence that will toll the statute is a change which involves a complete assumption of citizenship elsewhere. The appellant presents that what was said in the case on this head is dictum, because there never was a time at which substituted service could not have been had. But we need not go as far as it is said the *Farrow* case has, or the other cases referred to have gone. We need not demand a complete change of domicile and citizenship. It will suffice if we may rightly say that the cases which demand more than we do are at least authority for the proposition that a mere temporary absence for temporary purposes, with intention to return, and with no intention to abandon citizenship or domicile, does not toll the statute. We think they do that much, and that this is sustained by the weight of authority. In *Whitton v. Wass,* 109 Mass. 40, it is ruled that absence on military service is not to be deducted, if a domicile be retained in Massachusetts. Occasional absence of a resident who continues to reside in the state is not to be deducted. *Ford v. Babcock,* 2 Sand (N. Y.) 518, 529. In *Barney v. Oelrichs,* 138 U. S. 529 (11 Sup. Ct. Rep. 414), the court had under consideration a New York statute provision that if, after a cause of action accrues, the person against whom it accrues shall depart from and reside out of the state, the running of the statute should be suspended during such absence. It was held that the running of this statute is not suspended by mere temporary absence for business and pleasure, varying in length from 1 to 50 days, and averaging 2 months in each year. The court inquires whether if, in the administration of an

office, defendant were called to Washington for 24 or 48 hours, or visited some seaside or mountain resort outside of New York for a few days' recreation, or if business in other states demanded his temporary attention, whether he could be held to. be residing out of the state, within the intent and meaning of said statute. The final conclusion is that he would not be so held; that the words "to reside out of the state" do not mean a temporary sojourn for transient purposes, mean more than the mere alighting at a place in travel, or in pursuit of temporary objects; that "to reside out of the state" is not the equivalent of "absence from;" and that, therefore, something more than mere absence must appear. In *Wheeler v. Webster,* 1 E. D. Smith (N. Y.) 1, which is approved in the *Barney* case, supra, it is held that it was not a residence out of the state where no more than absence is shown, because such absence may have been merely temporary, on an excursion for pleasure or business, with intent to return to the state as the residence of the debtor.

It is not purposed to rest our decision wholly upon the character of the absence. We shall presently consider whether the judgment below does not have support other than the nature of defendant's trip to California. Before turning to these other matters, we inquire what the counter argument on the nature of the absence is—what is said by appellant on that head.

We are cited to *Penley v. Waterhouse,* 1 Iowa 497, 498. We shall recur to that case in another connection. For the present, we will but say that this is construed in *Postlewait v. Howes,* 3 Iowa 364, at 377, to rule that the statute would run if one's family *be* left in the state. Of course, this has no bearing in support of a claim that, if the family be *not* left in the state, that fact alone works a change. of residence, and suspends the running of the statute. The case of *Webster v. Citizens' Bank,* (Neb.) 96 N. W. 118, was

decided under the following statute:

"If after the cause- of action accrues he depart from the state, * * * the time of his absence * * * shall not be computed as part of the period within which the action must be brought."

It is held that, where a resident against whom a cause of action has accrued removes his residence to another state, but continues his business in Nebraska, and comes to the state openly, notoriously, and regularly during each business day, and there remains during working hours, he is not absent from the state, within the meaning of that statute. This holds not more than that, *if* service *can* be made in the state, the question of domicile, as distinguished from residence and from inhabitancy, is an immaterial one. That sheds no light on whether the statute runs though service *cannot* be made in the state.

We may concede that *Carden v. Carden,* 107 N. C. 214 (12 S. E. 197), rightly holds that a preacher who is assigned to and lives in a district outside of his state is a non-resident, within the meaning of the attachment laws, though he intends to return, and still claims a residence in the state, and visits it once or twice a year, but has no definite intention as to the time for returning, and merely a general intention to return. But that is not controlling. What else is there? In *Harden v. Palmer,* 2 E. D. Smith (N. Y.) 172, the defendant had been absent in Europe after the sale of his goods, at one time for 18 months and at another for 2 months; the absences, if deducted, brought the suit-within the statute time; and they were deducted. The real decision is that the debtor had no domicile in the state, and that, therefore, he, of course, resided out of the state while he was in Europe.

We are unable to see how *Cohen v. Daniels,* 25 Iowa 88, avails the appellant. It holds that, within the purview of statutes requiring personal actions to be brought in the

county where some of the defendants actually reside, that,
if one of them have any residence within the state, they
may be sued in any county wherein either may be found;
and that, if one, while in the act of changing his residence
from one county to another, with intent to make the latter
his future place of residence, is passing through an inter-
mediate county, he is, within the purview of said statute,
regarded as having no residence in the state; and that, in
that sense, there is a distinction between citizenship and
domicile.

### 2-a

The Territorial Act approved February 15, 1843, under
which *Penley v. Waterhouse,* 1 Iowa 497, 498, was decided.
provided that, if any person against whom there should
be a cause of action specified in a preceding section "shall
be out of this territory at the time of the cause of such ac-
tion accruing, or at any time during which a suit might
be sustained on such cause of action," then the period of
this absence was to be deducted from the statute period.
That under such a statute the *Penley* case was decided as
appellant contends the one at bar should be is an argument
against the appellant's position, instead of one support-
ing it. When the legislature declared, by such statutes as
have superseded said Territorial Act, that the time to be
deducted should be the time of "nonresidence," it declared
that the mere absence which sufficed under the superseded
law should no longer be sufficient to toll the statute. And
*Noble v. State,* 1 G. Greene 325, treats such legislative his-
tory as this as an important factor in the construction of
statutes *in pari materia.*

Waiving the fact of the statute then in force, it is
questionable whether *Penley v. Waterhouse,* 1 Iowa 497,
498, holds that mere absence from the state tolls the stat-
ute. We think that, although it might well have been held
under that statute that mere absence was sufficient, the

*Penley* case stops at deciding that, even under the statute then in force, a mere personal absence does not toll the statute if the family remained in the state, at the usual place of residence, so that service of process could be made. In the last analysis, the *Penley* case is but one of many which hold that, under existing statute law, mere absence prevents the service of process. See *Ward v. Cole*, 32 N. H. 452; *Gilman v. Cutts*, 23 N. H. 376. But note that the statute of New Hampshire speaks to "absence from and residing out of the state."

Cases like *Sleeper v. Paige*, 81 Mass. 349, *Slocum v. Riley*, 145 Mass. 370, *Ware v. Gowen*, 111 Mass. 526, and *Hackett v. Kendall*, 23 Vt. 275, are no aid to appellant, because decided under statutes like the Iowa Act under which the *Penley* case was decided, and which arrests limitation on "absence." And *Hackett v. Kendall*, 23 Vt. 275, is further weakened for the purposes of the appellant because in it the domicile in the state was broken up. The case of *Chenot v. Lefevre*, 3 Gilm. (Ill.) 637, 638, turns, for one thing, upon inability to make service, either personal or by substitution. This is the situation, also, in *Hackett v. Kendall*, 23 Vt. 275. (Delivery of notice to the sheriff is not mooted.) In *Vanlandingham v. Huston*, 4 Gilm. (Ill.) 125, at 128, the *Chenot* case is approved. And it is held that, under the statute of Illinois, whether there exists in the debtor the *animus revertendi* or not, the statute is arrested whenever the defendant prevents the serving of process.

The case of *Hedges v. Jones*, 63 Iowa 573, gives some support to the contentions of the appellant. It is said therein that the statute was arrested because defendant "was beyond all reach of the process of the courts of the state. Plaintiff's remedy on the note was entirely suspended, for the time, by his absence, and we do not believe that it was the intention of the legislature that the limitation of the statute should run in favor of a party during

such time; as, owing to his absence from the state, the power of his creditor to commence his action by service on him in the methods provided by law is suspended." But it is further said that defendant "did not retain any property or business interests in the state after the business at Indianola was closed out, in the spring of 1879, and it does not appear that it was his purpose to return to any particular place in the state." This distinguishes this case from the one at bar on the facts. Be that as it may, the *Hedges* case supports itself by the citation of *Penley v. Waterhouse*, 1 Iowa 497, 498, and *Savage v. Scott*, 45 Iowa 130. As has already been pointed out, that, whatever be actual decision in it, the *Penley* case was decided under a statute which arrested the statute by mere absence from the state (which is not now the statute law). The *Savage* case holds that the statute did run in favor of the debtor. This is put on the ground that, 'for some five months during the 10-year period of limitation, the debtor resided in the state, and it was possible to make service upon him, and because, though he went to Pennsylvania, he died there, and that, as a dead man can be a resident nowhere, the death destroyed the claim that, during the rest of the 10 years he resided out of the state; that, after his death, the property he had mortgaged could have been subjected to the process of the state; and that, therefore, the statute barred judgment on the note and foreclosure of the mortgage. It is to be noted, also, that the *Hedges* case gives no consideration whatever to the fact that, in cases such as the one at bar, the action could have been "commenced" at any time by delivery of the notice to the sheriff.

We are of opinion that the avoidance by appellant is, so far, insufficient.

III. It is apparent by now that we attach great importance to the fact that in nothing relied on by appellant was our statute on commencement of actions considered.

What does it matter that *Evans v. Montgomery,* 50 Iowa 325, at 333, holds that he who invokes the exception created by nonresidence has the burden of establishing its existence? The question is not who has the burden, but whether the burden has been discharged. Section 3450 of the Code of 1897 provides that the delivery of the original notice to the sheriff of the proper county, with intent that same be served immediately, is the commencement of the action, precisely as is actual service by one other than the sheriff. What does it matter, then, that there was a period of approximately three months during which an original notice could not have been served on this defendant? That could have been done which would have begun the action against him. For the sheriff did not go to California, and beginning action by delivering notice to the sheriff, with intent, etc., would, of course, have arrested the running of the statute. The statute does not run after the action is commenced. Delivering notice to him with intent that same be served immediately would have saved the rights of this appellant as effectively as actual service within the state. True, personal judgment could not be taken against a resident of Iowa by personal service made outside of the state. *Raher v. Raher,* 150 Iowa 511. That works merely that no default judgment can be taken on such service. It has no bearing upon whether the statute may not be tolled by what the statutes declare is the commencement of suit. Can it be true that the state has no power to declare that, while absence will defer judgment, taking certain steps shall entitle to civil judgment when the absent defendant returns to the county in which such steps have commenced a suit against him? A holding that the state has not such power would ignore that the legislature may order what shall commence an action and what commencement shall toll the statute. *Knight v. Moline, E. M. & W. R. Co.,* 160 Iowa 160. Speak-

ing to the question of which one of two pending actions to abate, we said, in *Boone v. Boone,* 160 Iowa 284:

"An action must, we think, be said to be pending at all times from the date of its institution or beginning until it has been adjudicated or dismissed, or has been otherwise finally disposed of. In other words, when an action has once been begun, it is thereafter a 'pending' action until its final disposition. What shall constitute the beginning of an action is, of course, a matter subject to regulation by statute."

Then follows a statement that usually actions must be commenced by actually serving notice, but that, "for the purpose of avoiding a plea of the statute of limitations," the provisions of Section 3450 declare a method. To the same effect is *Kenny v. Bankers Acc. Ins. Co.,* 136 Iowa 140, at 142, and *Wray v. Wray,* 159 Iowa 230.

"Under the law of this state, the statute of limitations is tolled by the commencement of the action." *Knight v. Moline, E. M. & W. R. Co.,* 160 Iowa 160.

In *Snyder v. Ives,* 42 Iowa 157, at 163, it is recognized that delivery to the sheriff with intent that there shall be immediate service constitutes the commencement of an action; for it holds that, even if it appear the notice was served a month after the petition was filed, the case is saved, because it will not be presumed that the notice was not delivered to the sheriff at the time the petition was filed, with intent, etc.; and that an action is not barred unless it be shown, for one thing, that original notice was not delivered to the sheriff with such intent.

### 3-a

Appellant is a citizen of Iowa. She asserts that the tolling of the statute by nonresidence creates a privilege for her protection. It is a privilege which the legislature could wholly withhold. It follows that it could attach conditions to the giving of the privilege—could put limitations

upon its use. It has done so. It has ·declared that inability to serve process shall not stop the running of the limitation statute, if the statute may be arrested by something other than the service of notice. It has declared that delivery of the notice to the sheriff, with intent, etc., begins suit. Beginning suit arrests the statute, though notice be not served. These provisions are effective, because the legislature has power thus to qualify the privilege of tolling the statute by nonresidence—a privilege of its voluntary creation. It follows that, here the action is barred because appellant has failed to use her power to arrest the statute. Had she begun the suit as the statute empowered her to do, her action would not now be barred. As said in *Patrick v. National Bank*, 63 Neb. 200, 208 (88 N. W. 183, at 186), had she begun action, it would be "needless to cite authorities to the effect that the statute does not run against a cause of action while a suit thereon is pending." The legislature gave this appellant the power to arrest the statute by following the steps pointed out in the statute. What she has lost has been lost by failure to avail herself of that privilege.

IV. In our opinion, it does not matter that service could have been made for most of the period of the statute. The plaintiff had the right to defer service to the very last day of that period; and, if service had then been made, it would be immaterial that it had not been made earlier.

The holding of *Glotfelty v. Brown*, 148 Iowa 124, does not avail the appellee. It holds that an intention to change a place of residence, unaccompanied by actual residence in a new location, is insufficient to avoid taxation at the old location. So of *Barhydt v. Cross*, 156 Iowa 271.—*Affirmed*.

LADD, C. J., EVANS and PRESTON, JJ., concur.