### DREW *versus* DREW.

Of the meaning of the term "outlawed."

At the expiration of six years from the time an unwitnessed note becomes due, the statute of limitation attaches by presumption of law.

To prevent the operation of the limitation bar, under § 28, c. 146, R. S., it must appear, that the promisor resided *without,* and had no home *within* the State.

The *residence* contemplated by that section is synonymous with *dwelling-place* or *home.*

An absence from the State by the maker of a note, though long continued, without evidence of an abandonment of his home within it, will not prevent the attachment of the statute of limitations.

---

Drew *v.* Drew.

---

ON FACTS AGREED.

ASSUMPSIT. The writ bears date on March 3, 1853, and contains two counts, one on a memorandum made by defendant, and the other for money had and received.

The defendant sold to plaintiff, on July 9, 1847, a promissory note of the following tenor: —

" North Yarmouth, Nov. 8, 1845. — One hundred and fifty-three days after date, I promise to pay Geo. E. Drew or order, the sum of two hundred forty-seven $\frac{41}{100}$ dollars. A. S. Haynes :"—and gave to him a memorandum in writing promising, that if said Haynes did not pay the amount of said note before it was outlawed, he would.

Haynes left his home in this State within a year after the note was given and has never returned. He went from this State to New York, where he remained until 1850, when, in company with about fifty others, he started, by the overland route, for California. One week after their departure the company was heard from, since which time, nothing has ever been heard of said Haynes, or any of the party he started with.

The case was submitted to the Court on these facts for a judgment according to law.

*Simmons,* for the defendant, relied in defence, upon the fact, that the maker of the note, within one year after it was made, left the State and has not returned; and that the statute of limitations does not attach whilst the promisor resides out of the State. R. S., c. 146, § 28.

Furthermore, that the death of Haynes could not be presumed. Greenl. on Ev., vol. 1, § 41; *Newman* v. *Jenkins,* 10 Pick. 515.

*Barrows,* for plaintiff.

1. The plaintiff is entitled to maintain this action upon the agreement. The Court will give such construction to the word " outlawed," as the subject matter of the contract and the situation of the parties indicate to have been the intent and understanding of the parties at the time. Chitty

on Contracts, pp. 74, 75, 79, 80, 81, 96, 97; *Patrick* v. *Grant*, 2 Shepl. 233; *Hawes* v. *Smith*, 12 Maine, 429.

2. But whatever the construction adopted, as it is apparent from the statement of facts that it is now no longer possible for the plaintiff to enforce payment against the maker by legal process, the note is, to all intents and purposes, "outlawed."

3. If no action is maintainable upon the agreement, and that is to be considered utterly futile according to the construction which the defendant now seeks to put upon it, then the money which the plaintiff paid to defendant for it, (the amount of the note,) is held contrary to equity and good conscience, and is recoverable under the count for money had and received. *Perkins* v. *Dunlap*, 5 Maine, 268; *Richards* v. *Allen*, 17 Maine, 296.

RICE, J. — Contracts should be construed according to the intention of the parties so far as practicable, without a violation of legal principles. When technical words, or terms of art are used, they should be construed according to their received technical meaning, unless it is manifest that they are used by the parties in a different sense.

The word *outlaw* has a distinct technical signification, and when used in that sense refers to persons, and not to things. Thus, an outlaw is one who is put out of the law; that is, deprived of its benefits and protection. In earlier times he was called a *friendlesman;* one who could not, by law, have a friend. An outlaw was said *caput genere lupinum*, by which it was meant, that any one might knock him on the head as a wolf, in case he would not surrender himself peaceably when taken. He forfeited every thing he had, whether it was in right or possession. All obligations and contracts were dissolved. 2 Reeves' Eng Law, 20. But in modern times the word has a much less stringent meaning, importing, however, the forfeiture of property and civil rights. Bur. L. D., Tit. Outlaw.

By the unlearned the word, "outlawed," is often used in a

different sense. By such it is applied to notes, bills, and other evidences of debt, which are supposed to have become invalid by lapse of time; or in other words, the term is used as tantamount to the legal language, "barred by the statute of limitations." Thus a barred note in popular phrase, is said to be *outlawed*.

It is obviously in this sense that 'the word outlawed, is used in the contract under consideration.

The note of Haynes, which is the subject of the contract, bears date Nov. 8, 1845, and was payable in one hundred and fifty-three days. It consequently fell due in April, 1846. If nothing intervened to prevent, that note would have been barred by the statute of limitations, or, in the language of the parties, would have been *outlawed*, in April, 1852. If so found, the liability of the defendant, then attached under his contract, and not otherwise.

The case finds, that Haynes left his home in this State within a year after the note was given, and has never since returned; that he went from this State to New York, where he remained until about four years ago, when, in company with some fifty others, he started by the overland route, for California. Since about one week after starting on that expedition, his friends have neither heard from him nor his company.

By § 28, c. 146, it is provided, that if after any cause of action shall have accrued, the person against whom it shall have accrued, shall be absent from, and reside without the State, the time of his absence shall not be taken as any part of the time limited for the commencement of the action.

The object of this provision, obviously was, to prevent debtors, against whom the statute of limitations had begun to run, from departing from the State, and remaining abroad a sufficient length of time for the statute to run out, and thus enable them to return and interpose this statute as a defence in bar.

The case finds, that Haynes has been absent from the State, and has not returned to it, since the expiration of

Drew v. Drew.

the first year after the note was given. The important question to be determined is, whether he has *resided* without the State, within the meaning of the statute. This provision was designed for the benefit of the creditor, to afford him protection in case his debtor should, for a series of years, place himself beyond the jurisdiction of our judicial tribunals. The absence of the debtor must be something more than a transient departure from his home on business or pleasure, and a temporary sojourn out of the State. For such casual interruption of his continuous personal presence, § 3, of c. 115, makes provision for the protection of both debtor and creditor.

To reside, is to dwell permanently, or for a length of time; to have a settled abode for a time. Webster's Dict.

*Inhabitancy* and *residence*, do not mean precisely the same thing as domicil, when the latter term is applied to succession of personal estate, but they mean a fixed and permanent abode, a dwelling place for the time being, as contradistinguished from a mere temporary locality of existence. 8 Wend. 134.

In this statute, the word residence is synonymous with dwelling place, or home; and a man cannot have such a residence out of the State as will interrupt the running of the statute of limitations, at the same time that he has an established residence, or home, within the State.

At the expiration of six years from the maturity of the note against Haynes, the legal presumption is, in the absence of proof, that the note was barred by the statute of limitation.

The burden of repelling or overcoming this legal presumption is upon the defendant. The case finds that Haynes left his home, and has never returned. He went to New York, where he remained until about four years ago, and then started for California.

The language, " left his home," is neither indicative of an intention not to return, nor to reside away from home, but rather the reverse. Neither is the succeeding language, that

he went to New York and *remained*, &c., tantamount to saying, that he *resided* in New York. To reside in a given place, imports something more than merely remaining in that place. The casual lodger at a public inn, the sojourner and the wayfaring man, as well as the man who is held in duress against his will, each and all *remain* in the place where they may repose, for the time being, or within which they may be confined; yet such place of repose or confinement could, in no just sense, be called their residence or home.

So when Haynes left his home, it does not appear, that he intended to change or abandon it. He remained in New York, but it does not appear that he had an established residence there, or intended to make that State his home.

As has already been remarked, the burden is upon the defendant, to repel the legal presumption in favor of the hypothesis of the plaintiff, to wit, that the note had been barred by the statute. This he has failed to do. A default must therefore be entered.

SHEPLEY, C. J., and HOWARD and CUTTING, J. J., concurred.

HATHAWAY, J., concurred in the result only.