[1] Reported in 283 N.W. 742.
Appeal by the Welfare Board of Hennepin county from a judgment of the district court of that county affirming a decision of the State Board of Control, hereinafter referred to as "state agency," finding one Edward H. Seidel to be a resident of Hennepin county and directing payment to him of old age assistance in accordance with his budgetary needs.
There is no dispute as to the facts upon which the decision is based. In 1912 Seidel moved from Minneapolis to Pelican township in Crow Wing county, where he located on an 85-acre tract of land referred to in the record as a homestead. He lived there until about June 1, 1934, when he was taken by the county nurse of Crow Wing county to the University Hospital in Minneapolis for treatment for anemia. He registered at the hospital as an "out patient." Such a patient is one who lives outside the institution and visits the hospital at intervals for treatment.
Seidel took treatment as an "out patient" until June 30, 1934, when he was admitted to the hospital as an "in patient." On August 11, 1934, he was again assigned as an "out patient." As such he returned for treatments at approximately 30-day intervals terminating on January 17, 1938.
When Seidel left the University Hospital on August 11, 1934, he went to the Berg Rest Home in Minneapolis and remained there until August 10, 1937. The home is referred to by the owner as a *Page 359 
hospital or a private institution in Minneapolis where city and relief patients taking treatment at the General Hospital, county patients taking treatment at the University Hospital, and private patients reside. Transportation between the home and hospital is sometimes furnished. The home provides nurses. It has no medical staff; each patient has the privilege of calling his own physician.
The county of Crow Wing certified Seidel to the University Hospital as a county patient and paid all his bills during the entire time he was an inmate of the Berg Rest Home.
On November 13, 1936, Seidel made application to Crow Wing county for an old age pension. In the application he listed himself as a resident of that county. The application was denied on April 19, 1937, on the ground that he was not a resident. On June 3, 1937, he made application for old age assistance to Hennepin county. Favorable action was taken, and payments began on August 1, 1937. This order was revoked, however, on December 23, 1937, on the ground that applicant was not a resident of Hennepin county. On appeal to the "state agency" from the order of revocation, it was determined that he was a resident of Hennepin county, and payments were ordered. On appeal to the district court the decision of the "state agency" was affirmed.
The proper disposition of this case requires that we determine the meaning of the word "resided" as used in 3 Mason Minn. St. 1938 Supp. § 3199-19(a, b) [Ex. Sess. L. 1935-1936, c. 95, § 9(a, b)], which provides as follows:
"(a) For the purposes of this act every person who has resided one year continuously in any county shall have a legal settlement therein, and such legal settlement shall not be deemed lost or terminated until a new settlement shall have been acquired in another county of this state or acquired in another state. The time during which a person has been an inmate of a hospital, poor house, jail, prison or other public institution shall be excluded in determining the time of residence hereunder.
"(b) An applicant for old age assistance shall file his application in writing with the county agency of the county in which he *Page 360 
has a legal settlement, in such manner and form as shall be prescribed by the state agency. Provided, however, that as to a person otherwise qualified who has no legal settlement in any county of the state, his legal settlement for the purpose of making application hereunder shall be deemed to be the county in which he has longest resided during the year immediately preceding the filing of such application."
The trial court in affirming the decision of the "state agency" reasoned that the term "resided" as used in the above sections should be deemed to have the same content as it was held to have in the case of Town of Smiley v. Village of St. Hilaire, 183 Minn. 533, 535, 237 N.W. 416, 417, where this court construed the term "resided" as used in the poor relief law, 1 Mason Minn. St. 1927, § 3161, to mean physical presence regardless of intent. Chief Justice Wilson, speaking for the court, said in the course of his opinion:
"The word 'reside' has two quite distinct meanings. The one legal and technical; the other personal, actual or physical habitation of a person. Where a person lives with his family at an established home, the place where he 'resides' is clear. That is his technical legal residence. Such residence embraces two elements: first, residence; second, the intention to remain there permanently for an unlimited time. To 'reside' in such manner gives a domicile, though the term domicile is not used in our relief statute. That is also the place of his actual or physical habitation. A person who has no such fixed place or domicile wherein he 'resides' but dwells in hotels, boarding houses, or the homes of others as suitable to his employment or convenience also 'resides' where he actually or personally lives. Indeed, he may with his family occupy a rented house and be within such meaning of the word. He simply lives at the particular place. He has not established a domicile. Such residence under our poor laws is temporary and continues so regardless of intention until it has ripened into such domicile. One may have a residence before he acquires a domicile. Yale v. West Middle School Dist. 59 Conn. 489,22 A. 295, 13 L.R.A. 161. Domicile *Page 361 
is residence, but residence is not always domicile. Kelsey v. Green, 69 Conn. 291, 37 A. 679, 38 L.R.A. 471. He may have such legal residence or domicile with his family and such actual or personal residence away from his home. In such event the word 'reside' may be correctly used to denote either the technical legal or the personal residence. The word 'reside' is often used to express a different meaning according to the subject matter."
Subsequent cases, involving in each instance the poor relief law, recognized this construction. City of Moorhead v. Town of Flowing, 184 Minn. 509, 239 N.W. 217; In re Settlement of Skog, 186 Minn. 349, 243 N.W. 384; State ex rel. Timo v. Juvenile Court, 188 Minn. 125, 246 N.W. 544; Township of Equality v. Township of Star, 200 Minn. 316, 274 N.W. 219.
But we are of the conviction that the term "resided" as used in the old age assistance law was intended by the legislature to mean physical presence in a county coupled with an intent to make a home there. Admitting that such construction is not in accord with our decisions as to the meaning of the same word as used in the poor relief law, differences in purpose and context of the respective laws compel the inference that the legislature intended that the relation of applicants to the county be of a more permanent character for eligibility under the old age assistance law than under the relief law. The poor relief law was designed to protect human beings from extreme hardships. It is essentially an emergency measure, and in many cases the recipients of relief are dependent on such assistance for life itself. Under such circumstances, the domiciliary intent of an applicant is of negligible significance. The purpose of the old age assistance act is of a different nature. Such assistance is, in one sense, a reward bestowed by the community on its aged members for past services and good citizenship. Extreme poverty is not a prerequisite to assistance. 3 Mason Minn. St. 1938 Supp. § 3199-18(b). Eligibility for assistance is conditioned on the applicant being a citizen of the United States or a resident of the United States for more than 25 years, § 3199-16(b), and a resident of the state for at least five years, at least one year *Page 362 
of which time must immediately precede application, § 3199-16(c). Written applications must be sworn to by the applicant and filed. § 3199-19(b, c). Provision is made for investigation of the applicants. § 3199-20. The right to appeal is insured for both the applicant and the "county agency." § 3199-21. The conclusion that the term "resided" as used in this act was intended to include the element of intent and the status of domicile is further fortified by § 3199-36 of the act, which provides:
"Whenever a recipient changes his place of dwelling he shall notify the county agency in which his old age assistance certificate is in effect. If he removes to another county he shall declare whether such absence is temporary or for the purpose of taking up regular domicile. The county originally granting old age assistance shall continue to pay the same regardless of change of residence within the state by a recipient."
Aside from the construction to be given the word "resided," another reason exists which requires reversal. Section 3199-19(a) includes this provision:
"The time during which a person has been an inmate of a hospital, poor house, jail, prison or other public institution shall be excluded in determining the time of residence hereunder."
It appears to us that applicant was at the time he filed his application for old age assistance a resident of Crow Wing rather than of Hennepin county. Concededly he was sent from Crow Wing to Hennepin county for the specific purpose of procuring medical treatment at the University Hospital. Such treatment, while intermittent and of such a nature that Seidel was not an "in patient," required regular attendance at the hospital. The county had the choice of sending applicant from his home to the University Hospital at the required intervals or of making provision for him in Minneapolis so that he might be available for the treatment. It pursued the latter course and provided for his care at an institution known as the "Berg Rest Home." While that institution may not, strictly speaking, be called a hospital, it was maintained in a *Page 363 
quasi hospital capacity. It does not appear from the record that applicant was engaged in any role other than that of a patient during the entire period. During his stay in Minneapolis he did not in any way evidence an intention to change his place of residence from Crow Wing to Hennepin county; in fact, during that period he made application for old age assistance in the latter county and claimed it as his residence. Although this claim was denied and the application disallowed, it appears as a matter of law that Seidel was an inmate of a hospital within the meaning of § 3199-19(a), and therefore retained his residence in Crow Wing county.
The judgment appealed from is reversed.