253 So.2d 4

**ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, Inc.**

**v.**

**Arch D. PRESTON, Jr.**

**7 Div. 890.**

Supreme Court of Alabama.

Sept. 30, 1971.

Hill, Hill, Stovall, Carter & Franco, Montgomery, Paul Hooton, Roanoke, for appellant.

494

A. L. Hardegree, Ashland, Rushton, Stakely, Johnston & Garrett and Henry C. Chappell, Jr., Montgomery, for appellee.

HARWOOD, Justice.

In the declaratory proceedings below the Chancellor decreed that Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., hereinafter referred to as the insurer, was obligated under either of two identical automobile insurance policies, to defend Arch D. Preston, Jr., in a suit brought against Preston by Beulah Smith, and to pay any judgment arising from said suit within the limits of either policy.

The suit arose out of a collision between a Dodge automobile driven by Preston, but belonging to his son-in-law, and an automobile driven by Beulah Smith.

At the time of the collision Preston owned two automobiles, a Chevrolet and a Volkswagen. He had in effect at the time of the collision an automobile liability policy issued by the insurer on each of his personally owned automobiles. The insurer denied coverage under the terms of the policies. Preston thereupon brought this declaratory proceeding, and from the decree in his favor the insurer has perfected this appeal.

There are no real conflicts in the testimony of the witnesses below, and the following factual situation is developed by such testimony.

On 1 October 1965, Mr. Preston's daughter Carol married Joe Magee. Shortly after the marriage, Joe Magee entered the United States Marine Corps. After he had completed his basic training Carol joined him and they resided at various Marine Corps installations. In August 1967, Magee was sent overseas and Carol and their small child returned to the home of her parents. A second child was born about two weeks after Carol returned to her parents' home.

In response to a question to Carol Magee by Mr. Preston's counsel as to where she went to stay when her husband went overseas, she replied, "Back with my parents." Likewise in response to a question by Mr. Preston's counsel addressed to Mr. Magee as to where his wife went when he went overseas, Mr. Magee responded, "She came back to stay with her parents."

Carol drove to her parents' home in the Dodge automobile, and it was kept in the yard there. The documentary title to the Dodge was in her husband though she testified it was owned jointly by her and her husband.

From the early part of August 1967 until Magee was discharged from military service, Carol remained in her parents' home. She received a monthly allotment from her husband's military pay and there is no evidence she was a financial burden to her parents. About two weeks after Magee's discharge from military service on 16 October 1968, he and Carol established their separate home.

Thus Carol was in her parents' home from early August of 1967 until the latter part of October 1968.

Mr. Preston testified he had driven the Dodge only twice during Carol's stay, once to take it to a garage for repairs, and the second time on the occasion of the collision on 15 July 1968. On this latter occasion Carol and her two children, and his wife and one of their children, were in the Dodge with him.

Under the Insuring Agreement of the policy as to non-owned automobiles, it is provided:

"Insuring Agreement II—Non-Owned Automobiles:

"If the named insured is a person or persons such insurance as is afforded by this policy under Coverages A, B, C, C–1, D–1, E, F, with respect to the automobile applies to the use of a non-owned private passenger automobile or utility automobile by the named insured or a relative * * * if such non-owned automobile is used with the permission of the owner. Insuring Agreement II does not apply: 1. to a non-owned automobile * * * (b) hired by or furnished or available to the named insured or relative for frequent or regular use, or * * *

&ast; &ast; &ast; &ast; &ast; &ast;

"Definitions—Insuring Agreements I and II * * * Relative—means a relative of the named insured who is a resident of the same household. * * *"

The validity of the decree herein appealed from depends upon whether Preston, at the time of the collision was driving an automobile furnished to or available to a relative for regular use, and whether such relative was a resident of Preston's household.

Since it is undisputed that the Dodge automobile was available to Carol for her regular use, and that Carol was Preston's daughter, the issue narrows to whether Carol was a resident of Preston's household at the time of the collision within the exclusion provision of his policies with the insurer.

In State Farm Mutual Automobile Ins. Co. v. Hanna, 277 Ala. 32, 166 So.2d 872, we had occasion to interpret the phrase "residing in the same household" present in the policy here under consideration. We can see no real distinction between that phrase and the one with which we are now concerned, i. e., "resident of the same household." In *Hanna* we wrote:

"The word 'residing' is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode. Phillips v. South Carolina Tax Comm., 195 S.C. 472, 12 S.E.2d 13. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. Drew v. Drew, 37 Me. 389. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of per-

496

manency to the degree required in domicile. 2 Kent's Comm. (10th Ed.) 576. While residence· is a necessary component of domicile, residence is not always domicile.. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word 'reside' may correctly denote either the technical domicile, or the actual personal residence. The word 'reside' is often used to express a different meaning according to the subject matter. In re Seidel, 204 Minn. 357, 283 N.W. 742."

■ Insurance contracts, like other contracts, are not to be construed so technically as to defeat the intention of the parties, but are to be given a rational and practical construction. We are not at liberty to make a new contract for the parties by a tortured construction. Holloway v. State Farm Mutual Automobile Ins. Co., 275 Ala. 41, 151 So.2d 774; Insurance Co. of North America v. Williams, 284 Ala. 510, 226 So.2d 295.

Premiums on insurance contracts are fixed upon a careful calculation of the hazards assumed, and the scope of coverage is directly related to breadth, or limitation, of the coverage provided. Holloway v. State, supra. Courts have considered that the obvious purpose in excluding from coverage an automobile owned or available to one residing in the insured's household is to avoid overloading a single policy by a multiple coverage of several vehicles owned by members of the same family. See Cox v. Santoro, 94 N.J.Super, 319, 228 A.2d 101; Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964). While an insured is covered as to permissive use of non-owned automobiles belonging to other persons, such use is regarded by insurers as casual and episodic and not of sufficient seriousness as to· be excluded. See Goens v. Arinder, supra.

■ Under the undisputed facts, Carol came to "stay" with her parents while her husband was overseas. While she did not intend to stay permanently with her parents, nevertheless her stay was to extend for an indefinite time. She was not a mere temporary visitor. Actually, she did remain in her parents' home for over a year. It was during this time that Mr. Preston had the collision while driving the Dodge automobile. We hold that under the undisputed facts the conclusion is dictated that Carol was residing in her father's home at the time of the collision. The language of the policy here involved is not legally ambiguous. Such language excludes liability of the insurer under the facts shown. This being so, it follows that the Chancellor erred in decreeing that the insurer-appellant was under obligation to defend Preston in the suit brought against him by Beulah Smith or to pay any damages that might be awarded in such suit.

The Chancellor made no formal findings of fact, but based his decree "under the facts as found by the court." Under such circumstances the reviewing court will assume that the Chancellor made those findings which the evidence supports and which would support the decree. Dockery v. Hamner, 281 Ala. 343, 202 So.2d 550. However, from our study of this record we can find no facts tending to support the decree. In fact, it would appear that under the developed and undisputed facts the decree of the court was contrary to such facts. The usual presumption of correctness accorded a decree or judgment entered upon an ore tenus hearing cannot therefore be indulged.

Accordingly, this decree is reversed, and the cause is remanded to the court below with instructions to enter a decree consonant with this opinion.

Reversed and remanded with instructions.

LAWSON, MERRILL and McCALL, JJ., concur.

MADDOX, J., concurs specially.

MADDOX, Justice (concurring specially).

I was initially inclined to dissent, but after careful study, I became persuaded that the majority opinion is correct.

The so-called "non-owned automobile" clauses are of comparatively recent origin and provide regular insurance coverage to the insured and any relative residing in his household in the infrequent use or casual driving of automobiles other than his own. Usually, such "non-owned automobile" clauses contain language which exclude from such extended coverage any automobile (1) owned by the insured or a member of his household, (2) hired by the insured or a member of his household or (3) provided for the regular use of the insured or a member of his household. The general purpose of the exclusion clause is to prevent a situation in which members of one family or household may have two or more automobiles which are used interchangeably but with only one particular automobile insured. Couch on Insurance, 2d § 45,238. The construction of "non-owned automobile" clauses is governed by the rules used generally in the interpretation and application of contracts of insurance. Several courts have construed an exclusion clause in situations where the "other automobile" was *owned by a relative* in the same household and have denied coverage. Home Indemnity Co. v. Alday, 213 So.2d 13 (Fla. App.1968); Cox v. Santoro, 94 N.J.Super. 319, 228 A.2d 101, aff., 98 N.J.Super. 360, 237 A.2d 491 (1967); Allstate Insurance Co. v. Chinn, 76 Cal.Rptr. 264, 271 Cal. App.2d 274 (1969); Hamilton v. Maryland Casualty Co., 368 F.2d 768 (5 Cir. 1966); Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964); 7 Am.Jur.2d, Automobile Insurance, § 107; 83 A.L.R.2d 926.

I can find but one case which is similar factually to this one, that is, where the "non-owned automobile" was *furnished to the relative* for the relative's use but was being driven by the insured at the time of the accident. In Farber v. Great American Insurance Co., 406 F.2d 1228 (7 Cir., 1969), Farber owned a Dodge and was covered by a policy which contained a "non-owned automobile" clause similar to the one in the policy here. At the time of his accident, he was driving a Chevrolet which was not owned by his wife, but which had been furnished for her use by her uncle. The Court, finding no ambiguity in the policy, concluded that the parties intended that no insurance coverage existed for accidents involving vehicles which were regularly used by the insured and his wife.[1]

It is difficult for me to admit that Arch Preston could drive almost any automobile in the world with the owner's permission and have insurance coverage, but is denied coverage when he drives, for the second time, according to his testimony, an automobile owned by a person who is not a member of the household, but which has been furnished to his married daughter for her use, while she resides in his household, and awaits the return of her soldier-husband from overseas. But I must concede that the exclusion clause states that coverage does not apply to a non-owned automobile, "* * * (b) hired by or *furnished or available to the* named insured or *relative* for frequent or regular use * * *." (Emphasis added)

Many of the "non-owned automobile" clauses specifically state that a non-owned automobile shall not include one which is furnished to the insured or a relative for regular use. The policy here gives coverage in Insuring Agreement II for automobiles not owned by the insured or any relative residing in his household, and unquestionably the automobile Preston was driving at the time of the accident was not owned by him or by any relative

---

1. The report of the case does not show how frequently Farber used the car furnished to his wife.

**498**

residing in his household.[2] Nevertheless, the exception clause specifically limits the broad definition of a non-owned automobile which is contained in Insuring Agreement II. I cannot say that this giving of coverage and then taking it away creates a pitfall or ambiguity which would allow us to construe the policy provisions liberally in favor of the insured. Preston apparently was not attempting to get coverage on several cars by insuring only one. He had two policies on the two cars he owned. His use of the Magee car was very infrequent.

The result reached here appears to be hard, but the provisions of the policy are not ambiguous and we are not at liberty to change them. Therefore, I am persuaded that the cause must be reversed and remanded.

2. The policy defines a non-owned automobile as follows:
"NON OWNED AUTOMOBILE—under Coverages A.B.C. and C–1 means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile. Under Coverages D, D–1, E and F means a private passenger automobile, utility automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile, while said automobile or trailer is in the possession or custody of the insured or being operated by him."