269 So.2d 869

George D. CROSSETT

v.

ST. LOUIS FIRE AND MARINE INSURANCE CO., a Corporation.

SC 33.

Supreme Court of Alabama.

Nov. 30, 1972.

Huie, Fernambucq & Stewart, Birmingham, for appellee St. Louis Fire and Marine Ins. Co.

Cato & Hicks, Birmingham, for appellee Cavell Co., Inc.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellant.

**BLOODWORTH, Justice.**

This is an appeal from a final decree in a declaratory judgment action. The trial court held that the bodily injury liability coverage, provided for under the omnibus clause of a homeowners insurance policy, did not apply to the son of the named insureds, who was then a student at Auburn University, Auburn, Alabama, living in Cavell Dormitory.

Appellant is George D. (Don) Crossett. The homeowners policy was issued to his parents, who lived in Birmingham, Alabama. On the evening of November 4, 1967, Don Crossett allegedly injured a classmate, Jerry Patterson, who was a close friend and former roommate, while they were engaged in an alleged altercation in Cavell Dormitory at Auburn, Alabama. The injury allegedly resulted in the loss of the classmate's eye. Don Crossett is the defendant in a lawsuit filed by the injured party, Jerry Patterson, which suit is pending in the Circuit Court of Jefferson County.

The insurer, St. Louis Fire and Marine, filed this declaratory judgment action to obtain a determination that it is not obligated to defend Crossett nor to afford him protection under the policy in that suit. Crossett's father and mother (George W. and Elizabeth B. Crossett) are the named insureds under the homeowners policy and were made parties respondent along with Jerry Patterson and Cavell Company, the dormitory owner.

The trial court held that Don Crossett was not an insured within the meaning of the policy terms under the omnibus clause, which reads as follows, viz:

> "2. DEFINITIONS:
>
> (a) Insured: The unqualified word 'Insured' includes (1) the Named Insured and (2) *if residents of his household*, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an Insured." (Emphasis ours.)

The trial court declined to make findings on the questions as to whether the alleged injury was "caused intentionally" or as to whether the alleged acts of Don Crossett were "business pursuits," both being policy exclusions. The trial judge decreed that both these questions were issues to be determined on the law side of the court. The trial court further held that St. Louis Fire and Marine Insurance Company had no obligation to defend Don Crossett nor any obligation to the injured party arising out of the incident.

The issue presented to us on this appeal is whether Don Crossett was a resident of the household of the named insureds, his parents (George W. and Elizabeth B. Crossett), on the date of the alleged incident.

Although Don Crossett was attending Auburn University, whereas his parents lived in Birmingham, Don had a room in the family home. (Auburn, Alabama, is 116 miles distant from Birmingham, Alabama.) Don was an only child and came home on weekends, except when Auburn was playing football at Auburn. He kept all of his personal belongings at his parents' home, including his off-season clothes; except those clothes he needed at school, his radio, books, and personal necessities. At the time of the incident, Don Crossett was 20 years old and a senior. He became 21 on November 21, 1967, and married the next day. St. Louis Fire infers from the testimony that the reason Don went "home" was to see his girl friend,

who lived in Birmingham and whom he subsequently married.

Don's father paid his tuition, automobile expenses, board, and provided him with money for incidental expenses. He was receiving his room rent free in Cavell Dormitory in exchange for serving as a counselor. Don sometimes worked during Christmas vacation in order to buy presents. He worked one summer driving a truck for the City of Birmingham and worked the Coke concession during one football season at Auburn's home football games, earning five to ten dollars per game.

Don listed his parents' address on his driver's license and registered for the draft in Ensley, near his parents' home.

He was at his family home during all holiday periods. When at his parents' home, they put restrictions on him, such as requiring him to be in at a reasonable hour.

When at school, he did as he pleased. He went to school all four quarters, but there were breaks between quarters of several weeks duration, when he was at his father's home in Birmingham, Alabama.

Resolution of the primary issue in this case turns upon an interpretation of the omnibus clause, which defines additional insureds as being relatives "if residents of his [the named insured's] household." Don Crossett was, of course, a relative of the named insureds, his mother and father.

Counsel for Crossett contend that the clause "residents of his household" is ambiguous and is due to be construed so as to extend coverage to the person seeking to become an additional insured if he can qualify in any ordinary sense, citing State Farm Mutual Automobile Ins. Co. v. Hanna, 277 Ala. 32, 166 So.2d 872 (1964).

The insurer also cites State Farm Mutual Automobile Ins. Co. v. Hanna, supra, contending that it is factually almost identical with the case at bar, dealt with a policy provision with almost identical provisions, and ought to be followed. The insurer argues that to follow Hanna, supra, will result in an affirmance of the trial court's decree, which held Don Crossett was not a resident of his father's household in Birmingham.

We must state our disagreement with the insurer's arguments and our agreement with Crossett's contentions. For it is our conclusion that the trial judge erred in holding that Don Crossett was not an additional insured within the meaning of, and as defined in the policy of insurance.

Perhaps at this point we ought to restate some general principles which we consider to be controlling in this case.

In Alabama Farm Bureau Mut. Cas. Ins. Co. v. Preston, 287 Ala. 493, 253 So.2d 4 (1971), it was said, viz:

"Insurance contracts, like other contracts, are not to be construed so technically as to defeat the intention of the parties, but are to be given a rational and practical construction. We are not at liberty to make a new contract for the parties by a tortured construction. * *" On the other hand, we stated in Hanna, supra, viz:

"The rule is too well settled by our decisions to require citation of authority that where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction will be adopted which is favorable to the insured."

Neither party has presented us with a decision of any court interpreting a like provision in a homeowners policy in a similar factual situation. Nor, has our research disclosed such a case. We have found one case interpreting an identical policy provision. It is Stadelmann v. Glen Falls Insurance Co. of Glen Falls (1967), 5 Mich.App. 536, 147 N.W.2d 460.

In Stadelmann, supra, it was held that a sister of the insured, member of another household and resident of a foreign country, was not a "resident of his household,"

within a homeowners policy definition of "insured," which included "residents of his household" and would not be entitled to recover for loss of personal property. While factually the case is inapposite, the policy provision is identical. The court did go on to hold that relatives, such as plaintiff, are temporary guests when visiting (as in this case), for definite periods of time and do not fall within the terms of the policy provisions as to additional insureds.

We have found other cases from other jurisdictions interpreting similar, or almost identical, policy provisions. For the most part, they have arisen in the construction of automobile liability policies extending coverage to additional insureds or excluding coverage to those who are residents of the insureds' household. See Barker v. Iowa Mutual Insurance Company, 241 N.C. 397, 85 S.E.2d 305 (1955) (construing clause "residing with insured" in loss away from premises in fire policy); Bartholet v. Berkness (1971), 291 Minn. 123, 189 N.W.2d 410 (construing clause "members of the same household" within meaning of auto liability exclusion).

Two cases interpreting similar or like clauses in automobile liability policies appear to us to be in point. They are: American States Ins. Co., Western Pac. Div. v. Walker, 26 Utah 2d 161, 486 P.2d 1042 (1971), and Manuel v. American Employees Insurance Company (La.Ct. of App. Third Circuit, 1969), 228 So.2d 321.

In *Walker*, supra, the daughter of insured, who kept some furniture, books and clothing in her father's home in Idaho, who had Idaho driver's license and voted there, but who had gone to Utah to college and was in training as x-ray technician, was held to be a "resident of the same household" as her father, the insured, and thus covered under his automobile liability insurance policy.

The Supreme Court of Utah, speaking through Mr. Justice Ellett, had this to say

about the meaning of the clause in question:

"A resident of a household is one who is a member of a family who live under the same roof. Residence emphasizes membership in a group rather than an attachment to a building. It is a matter of intention and choice rather than one of geography.

"Ordinarily when a child is away from home attending school, he remains a member of the family household, and the question of when he ceases to be such is one which must be determined from all of the facts and circumstances as revealed by the evidence."

In *Manuel*, supra, the Court of Appeal of Louisiana, Third Circuit, in an opinion authored by Judge Tate now Associate Justice, Supreme Court of Louisiana), held that a son of insured, who attended college 40 miles from his father's home, where he rented an apartment, but who kept most of his possessions and clothes in his father's home, and who returned there every weekend and on vacation, and whose permanent mailing address was the father's home, was a "resident of the same household," as the father within the uninsured motorist provision of the father's policy.

Concerning the meaning of the term "resident of the same household" as applied to the facts of the son's attendance at college, the court held:

"He had changed his temporary college residences several times before trial, but he always returned home weekly and during vacations to his room in his father's house. He and those who testified regarded his father's house as his home.

"We find no error in the trial court's factual finding that the plaintiff was a resident of his father's household—that his residence (indeed, his principal residence) was with his father.

"Under the evidence, even if the temporary dwelling places in which he lived

during the college week were his residences, nevertheless, he was also a resident in his father's home, where he maintained his possessions and to which he returned weekly and which was, in fact, his permanent home. While a person may have only one domicile (his permanent residence and principal establishment), he may as a matter of fact have more than one residence (his actual dwelling place, or where he actually lives).

\* \* \* \* \* \*

"Here, however, the plaintiff had never moved from his permanent home with his parents. His schooling residences were intended to be temporary in nature, and he had never severed his ties with his parents' home as his permanent residence to which he returned whenever free. He actually lived with his father, within the meaning of the policy term of being 'a resident of the same household.' "

Factually, *Manuel*, supra, is very close to being on "all-fours" with the case at bar.

While this case involved interpretation of an automobile liability uninsured motorist provision and the case at bar a homeowners policy, this is a distinction without a difference. Both cases involve policy provisions extending coverage to additional insureds.

It has been so often repeated as to scarcely require authority that policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer. This, for the reason that policies of insurance are unipartite. We denominate them "contracts" yet only the insurer signs them. The insured generally sees the policy only after he has already paid the premium. The policy provisions are inserted by those skilled in insurance law and acting in the interest of the company. Thus, the principle above enunciated has arisen. Barker v. Iowa Mutual Insurance Company, supra; Union Mutual Life Ins. Co. v. Wilkinson, 13 Wall.

222, 232, 80 U.S. 222, 232, 20 L.Ed. 617 (1871).

We must conclude that the two cases, *Walker*, supra, and *Manuel*, supra, provide ample authority for our finding that the trial court erred in holding Don Crossett was not an insured within the definition of that term under his father's homeowners policy. Moreover, the holding of the *Hanna* case, supra, also sustains our conclusion.

Under a somewhat similar fact situation, involving a similarly worded automobile liability insurance policy clause, this Court in State Farm Mutual Automobile Ins. Co. v. Hanna, supra, held, viz:

> "*The word 'residing' is an ambiguous, elastic, or relative term*, and includes a very temporary, as well as a permanent, abode. Phillips v. South Carolina Tax Comm., 195 S.C. 472, 12 S.E.2d 13. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. Drew v. Drew, 37 Me. 389. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. 2 Kent's Comm. (10th Ed.) 576. While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word 'reside' may correctly denote either the technical domicile, or the actual personal residence. *The word 'reside' is often used to express a different meaning according to the subject matter*. In re Seidel, 204 Minn. 357, 283 N.W. 742." (Emphasis ours.)

The facts of *Hanna*, supra, were that the insured, a 20 year old college student living in a dormitory at Howard College in Birmingham, Alabama, was involved in an automobile accident while at the family home in Tallassee, Alabama, for the weekend. His father was injured in the accident. The insured's automobile liability

policy contained a provision which excluded from coverage " 'bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.' " The insured spent his vacations and occasional weekends in the family home, kept some of his possessions there and gave it as his address to the draft board. His driver's license listed it as his home. In selling the policy, the insurer's agent stated that he considered him to be a member of his father's household.

This Court held that the trial court did not err in its conclusion that Hanna was not a resident of his father's household.

In *Hanna*, supra, a family exclusion clause in an automobile liability policy was involved, and it is obvious that the construction of the word "residing" was adopted which permitted the father to sue his son in tort for the injuries he sustained.

We repeat, this Court specifically held in *Hanna*, supra:

"*The word 'residing' is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode.*

\*   \*   \*   \*   \*   \*

"The rule is too well settled by our decisions to require citation of authority that *where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction will be adopted which is favorable to the insured.*" (Emphasis ours.)

Thus, the rule as to plural construction of insurance contracts was followed in order to give a favorable construction to the insured.

■ While in the instant case a clause in a homeowners insurance policy is involved extending coverage to "residents" of the household of the named insured, the term "residents" is clearly an ambiguous one and is capable of two rational constructions.

Thus, that construction should be adopted which is in favor of the insured. It is clearly favorable to the named insured (and his son) in this case to have the son defended in the tort action filed by Jerry Patterson against him. It is thus that we hold Don Crossett was a resident of the household of his parents, the named insureds under the insurance policy, at the time of the incident.

The insurer, St. Louis Fire and Marine, however, contends that *Hanna*, supra, held the father (the injured party) and his son (the insured) were not residing in the same household at the time of the accident; and therefore, such holding would authorize our affirming the trial court in the instant case.

We think such a construction of *Hanna*, supra, completely overlooks the obvious basis for the *Hanna* holding, which is that the court found the exclusionary clause "residing in the same household" to be ambiguous and, under the rule, adopted that construction which was favorable to the insured. Here, we follow the same rule and adopt that construction which is favorable to the insured, extending coverage, after finding an almost identical clause to be ambiguous.

In conclusion, we hold that Don Crossett is an insured under the St. Louis Fire and Marine Insurance Company policy.

We do not say, nor do we hold, that St. Louis Fire is obligated to defend Don Crossett, because it has not been determined by the trial court whether the alleged injury was "caused intentionally" or whether Don Crossett was then engaged in "any business pursuit \* \* \* except \* \* \* activities therein which are ordinarily incident to non-business pursuit," within the meaning of these two special policy exclusions. As to these two issues the trial court made no ruling.

In brief, counsel for Crossett urge that we dispose of these two issues on this appeal so that the litigation may be finally

terminated. At the time of submission, both counsel suggested that we dispose of these issues.

While we might like to dispose of these matters, in the interest of judicial economy, we cannot do so, because the trial court did not rule on either issue. This Court recently held in a like situation, viz:

"* * * Since the lower court's decree does not mention these matters, but denied relief on specific grounds heretofore mentioned, this Court construes that the lower court did not rule upon the issues presented by appellee in this regard. This is a court of appellate jurisdiction, with few exceptions, and this court is not disposed to pass on questions upon appeal not considered or decided by the trial court. City of Birmingham v. Wheeler, 225 Ala. 678, 145 So. 140; Penn Mut. Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346." Hogan v. Allstate Insurance Company, 287 Ala. 696, 255 So.2d 35 (1971).

See also: Brockway et al. v. United States Finance Co., Inc., (1972) 289 Ala. 198, 266 So.2d 756.

This decree of the trial court is therefore reversed and the case remanded for a consideration by the trial court of the other two issues, and for a determination as to what are the insurer's obligations under its policy of insurance to Don Crossett and the injured party.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.

COLEMAN, J., concurs in the result.

SOMERVILLE, J., concurs specially.

SOMERVILLE, Justice (concurring specially).

I agree that the appellant, George D. Crossett, was a resident of his parents' household at the time of the altercation with his classmate and hence I concur in the result reached in the foregoing opinion of Justice Bloodworth. However, I feel that our holding here is inconsistent with our decision in *Hanna*, supra, and that our present decision should expressly overrule *Hanna*. I take no issue with the well entrenched rule that where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction should be adopted which is favorable to the insured. Also, I agree that the word "residents" in the appellee's policy in the instant case has no precise inflexible meaning applicable to all situations and is correctly construed here. But in *Hanna* we held that a college student living in a dormitory at Howard College in Birmingham was *not* "residing in the household" of his father at Tallassee and we thereby removed the ambiguity of that phrase and gave it a definite meaning as applied to the facts in that case. Now, in a similar factual situation, we hold that a college student (Crossett) while living in a dormitory at Auburn University *was* a "resident of the household" of his father in Birmingham.

My point is that the same phrase (or a phrase acknowledged to be substantially the same) when applied to a similar or a substantially similar situation, should not be held to mean one thing on one occasion and the opposite thing on another. Having, by construction in *Hanna*, removed any ambiguity as to the meaning of the phrase "residing in the household" when applied to a college student temporarily living away from his parents, consistency should require that we either continue that construction or, as I urge, overrule *Hanna*.