Russell Mathis was injured when the motorcycle he was riding collided with an automobile operated by an uninsured motorist. Mathis claims that he was an "insured" under the uninsured motorist provisions of an automobile liability insurance policy issued by Employers' Fire Insurance Company to his stepfather, Don Hollis, even though he was not living in the same house with his stepfather, but was living in a house with his mother, who at the time of the accident was separated from, and later divorced from, Hollis. The trial court concluded, as a matter of law, that Mathis was not an "insured" and granted the insurance company's motion for summary judgment. We reverse.
The crucial issue is whether there was a scintilla of evidence that Mathis qualified as a "relative of the named insured who is a resident of the same household."
The facts presented in support of and in opposition to the motion for summary judgment show that Russell Mathis's mother, Juanita Cunningham Mathis, married Don Hollis in 1974 or 1975, and that Russell Mathis resided with his mother, stepfather and twelve-year-old sister, Jo Anne Mathis, at his stepfather's home in Dothan. He used his stepfather's address on his social security card, driver's license and employment records. In September or October of 1976, Russell moved out of his stepfather's *Page 274 
house and went to live with his older brother, Kenneth Allen Mathis. Russell never lived in the same house with Don Hollis after that time.
In May of 1977, Russell's mother separated from Hollis, and she and her daughter moved to a separate residence in Dothan. Subsequently, Russell and his older brother moved into the same residence to live with their mother and sister. On July 11, 1977, Russell was involved in the accident for which he filed a claim for benefits under the uninsured motorist provisions of the policy now being considered.
In order to decide the fundamental issue it is necessary for us to consider certain terms in the policy which define "relative," "named insured" and "resident of the same household." In deciding this issue, we apply the rule of law applicable in summary judgment cases, viz., that summary judgment is proper only when "there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law." Loveless v. Graddick, 295 Ala. 142,325 So.2d 137 (1975).
The policy issued to Don Hollis provides:
 Coverage J — Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile, provided for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
[Emphasis added.]
The term "insured" is defined under the uninsured motorist provisions of the policy as "the named insured and any relative." The term "named insured" is, in turn, defined under the general definitional section of the policy as "the individual named in Item 1 of the declarations [in this case, Don Hollis] and also includes his spouse, if a resident of thesame household." (Emphasis added.) Likewise, the term "relative" is defined as "a relative of the named insured whois a resident of the same household." (Emphasis added.) By virtue of these definitions, appellant's potential status as an "insured" under the policy in question is dependent upon two factors, viz., (1) his place of residence on the date of the accident and (2) his relationship to the named insured.
In State Farm Mutual Automobile Insurance Co. v. Hanna,277 Ala. 32, 166 So.2d 872 (1964), this Court considered the possible meanings of the nebulous term "residing" as that term appeared in a similar automobile liability insurance policy. In that case the policy contained a family exclusion provision which excluded coverage for:
 Bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.
At 277 Ala. 37, 166 So.2d 876, the Court opined:
 The word "residing" is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode. Phillips v. South Carolina Tax Comm., 195 S.C. 472, 12 S.E.2d 13. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. Drew v. Drew, 37 Me. 389. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. 2 Kent's Comm. (10th Ed.) 576. While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word "reside" may correctly denote either the technical domicile, or the actual personal *Page 275 
residence. The word "reside" is often used to express a different meaning according to the subject matter. In re Seidel, 204 Minn. 357 [283 N.W. 742].
See also, Crossett v. St. Louis Fire and Marine Insurance Co.,289 Ala. 598, 269 So.2d 869 (1972). In the instant case, we are confronted with the construction and application of similar terminology. The term "resident," like the term "residing," is "an ambiguous, elastic, or relative term." Tencza v. AetnaCasualty Surety Co., 21 Ariz. App. 552, 521 P.2d 1010 (1974), citing Crossett, supra. It is defined in 77 C.J.S. Resident p. 305 (1952) as follows:
 The word "resident" is in common usage, and many definitions of it are to be found in the decisions. It is, nevertheless, difficult to give an exact, or even a satisfactory, definition, for the term is flexible, elastic, slippery and somewhat ambiguous.
 "Resident" has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.
Courts have recognized that to be a "resident" of a named insured's household an individual must be more than a temporary or transient visitor, and must actually live with others in the same household for a period of some duration. Hardware MutualCasualty Co. v. Home Indemnity Co., 50 Cal.Rptr. 508,241 Cal.App.2d 303 (1966); Pamperin v. Milwaukee Mutual Ins. Co.,55 Wis.2d 27, 197 N.W.2d 783 (1972). This determination is simplified when the purported "resident" is actually living in the named insured's home and intends some permanency of occupation; however, a more difficult question arises when, as in the present case, persons who claim to be "residents of the same household" are not, in fact, living together under one roof. In such instances, the trier of fact must ascertain the respective intentions of the parties.
In Southern Farm Bureau Casualty Insurance Co. v. Kimball,552 S.W.2d 207 (Tex.Civ.App. 1977), the court, citing cases from several jurisdictions, stated the rule as follows:
 The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question is not solely whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporary — i.e., whether there is physical absence coupled with an intent not to return. In American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042, 1044
(1971), the court said that the residence in question "emphasizes membership in a group rather than an attachment to a building"; and that it is "a matter of intention and choice" rather than one of location. Under proper facts, it has been held that separations from the common roof by college students, by members of the military services, and by spouses (albeit with divorce actions pending) did not, per se, destroy their household membership with their families and spouses. See, Crossett v. St. Louis Fire and Marine Ins. Co., 289 Ala. 598, 269 So.2d 869 (1972); Manuel v. American Employers Insurance Company, 228 So. 321
(La.App., 1939); Giese v. Karstedt, 30 Wis.2d 630, 141 N.W.2d 886 (1966); Allstate Ins. Co. v. Jahrling, 12 N.Y.2d 943, 238 N.Y.S.2d 517, 188 N.E.2d 791
(1963); Doern v. Crawford, 36 Wis.2d 470, 153 N.W.2d 581 (1967); American Casualty Co. v. Harleysville Insurance, 238 Md. 322, 208 A.2d 597 (1965); Lumbermen's Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104 (Alaska Sup., 1963). Related annotations are found in 173 A.L.R. 901, 1 A.L.R.2d 557, 78 A.L.R.2d 1395, and 46 A.L.R.3d 1024. *Page 276 
The Court in Tencza v. Aetna Casualty Surety Co., supra, came to a similar conclusion and determined that "[r]esidence emphasizes membership in a group rather than an attachment to a building — it is a matter of intention and choice rather than one of geography."
Focusing solely upon the relationship between Russell and his stepfather, we perceive no factual basis upon which appellant might be considered a "resident" of his stepfather's household. To the contrary, Russell's action in moving out of his stepfather's home to live with his brother manifested an intention on his part to establish a separate residence. Nevertheless, Russell may still be entitled to insurance benefits if his mother qualifies as a "named insured" under the policy. Here again, this depends upon whether, on the date of the accident, Russell's mother was a resident of Don Hollis's(i.e., the individual named in Item 1 of the declarations) household. If so, Russell's mother would be a "named insured" under the policy and appellant would be a relative of the "named insured" who is a resident of the same household.
We hold that there is at least a scintilla of evidence to support a finding that Russell's mother was a resident of Don Hollis's household on the date of the accident, although it is undisputed that on the date of the accident she was separated from her husband. As noted previously, living under the same roof is not the sole test for determining a common residency. Although Mrs. Hollis eventually filed for divorce in September of 1977, she stated in an affidavit that on the date of the accident, she was uncertain about her relationship with Mr. Hollis. There had been previous separations between the Hollises which ended in reconciliation and Mr. Hollis was seeking a reconciliation on this occasion. These facts constituted at least a scintilla of evidence that Mrs. Hollis had not, on the date of the accident, formed a definite intent to permanently remove herself from her husband's household.
There are numerous cases in which appellate courts have considered the factual question of whether a husband and wife remain residents of the same household during a marital separation. See generally, Annot., 96 A.L.R.3d 804 (1980);Annot., 93 A.L.R.3d 420 (1979). In resolving this question, courts have focused upon a variety of factors in striving to ascertain the intention of the parties. In the instant case, we perceive the possibility of reconciliation as a highly significant factor. As noted by the Court in Hawaiian Insurance Guaranty Co. v. Federated American Insurance Co.,13 Wn. App. 7, 534 P.2d 48 (1975):
 From the cases which have dealt specifically with coverage during the period that one spouse has separated from the other, the basic inquiry is whether the separation was intended to be permanent without the prospect of reunion or temporary with reconciliation a possibility. Coverage continues where a spouse leaves in hope that a reconciliation may take place; but where the fixed intent is to depart permanently and reconciliation is not contemplated, coverage ceases. . . .
[Emphasis added.]
Cf., Lumbermans Mut. Cas. Co. v. Continental Cas. Co.,387 P.2d 104 (Alaska 1963); American Cas. Co. v. Harleysville Ins.,238 Md. 322, 208 A.2d 597 (1965). Indeed, there are other factors indicating that Mrs. Hollis did intend to establish a separate residence. For example, the fact that she subsequently sought and obtained a divorce is highly relevant. Cf., Neidhoefer v.Automobile Ins. Co., 182 F.2d 269 (7th Cir. 1950) (subsequent divorce relevant in establishing wife's intention to make separation permanent); Zurich Ins. Co. v. Monarch Ins. Co. ofOhio, 247 Md. 3, 230 A.2d 330 (1967) (subsequent reconciliation relevant in establishing wife's intention to make separation temporary). A trier of fact may well conclude that Mrs. Hollis's separation from Don Hollis was permanent; however, that question cannot be resolved by the trial court on a motion for summary judgment.
The trial court's action in granting appellee's motion for summary judgment is due to be reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 277