Southern Guaranty Insurance Company sought a judgment declaring that Lawrence A. Knight, III was not an insured under an automobile liability policy issued by Southern Guaranty to Lawrence's father, Dr. Lawrence Knight, and that Southern Guaranty had no obligation to defend or to provide coverage to Lawrence in a personal injury action brought against him by Carl Harold Bayles and Melissa Ann Bayles.
On July 16, 1983, Lawrence was driving an automobile owned by Mitch Brown. Mitch, Melissa Ann Bayles, and one other person were in the automobile when it ran off the road and collided with trees and other obstacles. Melissa is a paraplegic as a result of this accident.
Dr. Knight was the named insured in the policy issued by Southern Guaranty. Lawrence is his 21 year-old-son. If Lawrence were a resident of Dr. Knight's household at the time of the accident, then Southern Guaranty must provide coverage in the underlying lawsuit as excess coverage to the liability coverage on the automobile Lawrence was driving, unless Dr. Knight misrepresented Lawrence's status to Southern Guaranty.
At the conclusion of the evidence, the trial court granted a directed verdict for Southern Guaranty. Defendants appeal.
When a trial court has granted a directed verdict, this Court's function is to view the *Page 1067 
evidence most favorably to the party against whom the verdict is directed, by conceding the truthfulness of all evidence favorable to the nonmoving party and thereby removing all issues of credibility from the case, and then determining if there are evidentiary facts from which the jury could reasonably infer the ultimate facts upon which the claim or the defense depend. If there are such evidentiary facts, then the judgment must be reversed and the case remanded. Williams v.Ford Motor Credit Company, 435 So.2d 66 (Ala. 1983); Herston v.Whitesell, 374 So.2d 267 (Ala. 1979); Blackwell v. AlabamaPower Co., 275 Ala. 123, 152 So.2d 670 (1963).
In Crossett v. St. Louis Fire Marine Insurance Co.,289 Ala. 598, 269 So.2d 869 (1972), this Court quoted with approval the following from American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042 (1971):
 "`A resident of a household is one who is a member of a family who live under the same roof. Residence emphasizes membership in a group rather than an attachment to a building. It is a matter of intention and choice rather than one of geography.'"
The Court also quoted with approval the following from Manuelv. American Employees Insurance Co., 228 So.2d 321 (La.Ct.App. 1969):
 "Under the evidence, even if the temporary dwelling places in which he lived during the college week were his residences, nevertheless, he was also a resident in his father's home, where he maintained his possessions and to which he returned weekly and which was, in fact, his permanent home. While a person may have only one domicile (his permanent residence and principal establishment), he may as a matter of fact have more than one residence (his actual dwelling place, or where he actually lives)."
This Court is of the opinion that there was direct evidence that Lawrence was a resident of Dr. Knight's household at the time of the accident. Southern Guaranty does not discuss this aspect of the case in its brief. Lawrence had a bedroom at Dr. Knight's home where he kept most of his clothing and belongings; he ate many of his meals at Dr. Knight's home; he received his mail there; he shared a bathroom with his father and kept most of his toiletries there. His mother fixed his lunch for him to take to work; she did most of his laundry at Dr. Knight's home. Lawrence would let his mother know whether he would eat supper at home, and, if he were planning not to spend the night at Dr. Knight's, he would let his parents know before midnight. Lawrence had graduated from a junior college in May 1983. He entered Auburn University in the fall of 1983. During the summer of 1983 (when the tragic accident occurred), Lawrence spent many nights at a friend's "bachelor pad" when the exigencies and/or excesses of the evening made it unwise or imprudent for a single 21-year-old male to be at his father's home. He paid no rent for this convenience. Lawrence also spent some nights in a mobile home in Pineapple, Alabama, near Dr. Knight's farm, which was available for the use of Dr. Knight's family when at the farm. Lawrence spent less than half of the 45 nights in June and the first half of July at Dr. Knight's home.
Having decided that there was direct evidence from which a jury could have determined that Lawrence was a resident of Dr. Knight's household at the time of the accident, we now consider whether, as contended by Southern Guaranty, Dr. Knight misrepresented Lawrence's status as a resident of Dr. Knight's household.
The written application does not help. It has a line calling for "Full Name of All Drivers," under which Dr. Knight, his wife, and his daughter are listed. It does not call for a listing of relatives who are residents of the named insured's household. The application does have a place to "Show Name, Date of Birth and Sex of any Child over 12 years not listed above." Nothing appears there. Randy McDonald, *Page 1068 
who had authority to bind coverage for Southern Guaranty, knew that Lawrence was Dr. Knight's son. He knew that Lawrence was over 12 years old. Lawrence had previously been listed as a driver under other insurance policies which McDonald had placed for Dr. Knight. On June 22, 1983, Lawrence's truck was removed from coverage and Lawrence's name was removed from the list of drivers when Dr. Knight's insurance was switched by McDonald to Southern Guaranty. This was less than a month before the accident which is the basis of the underlying lawsuit. McDonald completed the application. Dr. Knight signed the application, warranting that the answers to the questions in the application were complete and true and that there were "no other drivers other than stated in the application." Lawrence was not driving a vehicle owned by Dr. Knight at the time of the accident. The following also appeared above Dr. Knight's signature: "It is agreed that any untrue statements or answers contained therein or any facts concealed, intentionally or otherwise, will render any insurance issued on this application void." Dr. Knight certainly did not conceal Lawrence's existence or his age from McDonald. McDonald completed the application and for reasons known only to him did not complete the blank following the query: "Show name, Date of Birth and Sex of any child over 12 years." The alleged representations referred to by Southern Guaranty in its brief were the verbal statements made to McDonald by Dr. Knight on June 22, 1985. On that date, McDonald went to Dr. Knight's office. McDonald had previously written Dr. Knight's automobile insurance. McDonald testified that he told Dr. Knight that McDonald would "love to try to get him off such a high rate that we previously had" and that Dr. Knight responded "you're my insurance man, you do what you have to do." McDonald further testified that in response to McDonald's question as to whether everything was the same as it was on the original application, Dr. Knight said there had been some changes, stating, "Lawrence is no longer in my household; Lawrence has moved out with another boy in a house that they have rented and is planning to go to Texas." McDonald testified that he told Dr. Knight that if Lawrence were not living with him, he would not have to rate him in the household. Clearly, Dr. Knight told McDonald to remove Lawrence's personal truck from Dr. Knight's policy, which was done. For aught that appears, McDonald did not ask any questions to clarify what Dr. Knight meant by "has moved out" or "is no longer in my household."
On direct examination, Dr. Knight testified that he did not make any statements implying that Lawrence was no longer living with him, except to say that he was probably going to Texas to work, that Lawrence was grown, and to take his truck off of Dr. Knight's policy. Dr. Knight testified that there was no discussion about whether Lawrence was a resident of Dr. Knight's household. On cross-examination, Dr. Knight testified that he did not recall telling McDonald that Lawrence had moved out of the house. He agreed with the testimony which he had given in a deposition, that Lawrence was not really living at home (he had spent over half of the nights in June and the first half of July away from home) and was old enough to see about his own insurance and his own truck. Dr. Knight explained "he was not living at home every day, no, sir, he was not." He further testified: "[Lawrence was still] a member of my household. He was still my son. Lawrence was my son and he lived with me." Dr. Knight testified that Lawrence was a resident of Dr. Knight's household at the time Dr. Knight purchased this insurance and that Dr. Knight never told McDonald that Lawrence "is no longer my son and he is no longer a resident of my household." Someone could always get in touch with Lawrence by inquiring at Dr. Knight's home.
This Court in State Farm Mutual Automobile Ins. Co. v. Hanna,277 Ala. 32, 166 So.2d 872 (1964), held:
 "The word `residing' is an ambiguous, elastic, or relative term, and includes a *Page 1069 
very temporary, as well as a permanent, abode. Phillips v. South Carolina Tax Comm., 195 S.C. 472, 12 S.E.2d 13. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. Drew v. Drew, 37 Me. 389. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. 2 Kent's Comm. (10th Ed.) 576. . . ."
Dr. Knight was not asked "Is Lawrence a `resident of your household'?" when the application for insurance was taken; and Dr. Knight testified that he did not tell McDonald that Lawrence "is no longer my son and he is no longer a resident of my household." Dr. Knight admitted that he may have told McDonald that Lawrence had moved out of the house and was not really living at home. Was this a misrepresentation which would avoid a policy as a matter of law? The jury could have found that in truth Lawrence had moved out or was not really living at home and still have found that Lawrence was a resident of Dr. Knight's household.
In 77 C.J.S. Resident at 305, 306 (1952), it is said:
 "The word `resident' is in common usage, and many definitions of it are to be found in the decisions. It is, nevertheless, difficult to give an exact, or even a satisfactory, definition, for the term is flexible, elastic, slippery, and somewhat ambiguous."
 "`Resident' has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case."
When an insurance company, in drafting its policy of insurance, uses a "flexible, elastic or slippery" word to mark out and designate those who are insured by the policy, and the insured did not use this "flexible, elastic or slippery" word in his representations to the agent taking the application for insurance, it is for the trier of fact to determine whether there were misrepresentations made by the insured which would void the policy.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.